## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ESTATE OF ELLIOTT NAYTHAN FUNKHOUSER, SR.** | : | |
| **BY AND THROUGH DIANE MARIE FUNKHOUSER** | : | **CIVIL ACTION** |
| **ADMINISTRATOR OF THE ESTATE OF** | : | **No.: 2:24-cv-1091** |
| **ELLIOTT NAYTHAN FUNKHOUSER, SR.** | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| | : | **JURY TRIAL** |
| **DELAWARE COUNTY** | : | **DEMANDED** |
| 201 West Front Street, Media, PA 19036 | : | |
| **and** | : | |
| **GEO GROUP, INC.** | : | |
| 4955 Technology Way | : | |
| Boca Raton, FL 33431 | : | |
| **and** | : | |
| **JAIL OVERSIGHT BOARD OF DELAWARE** | : | |
| **COUNTY PENNSYLVANIA** | : | |
| 500 Cheyney Road Thornton, PA 19373 | : | |
| **and** | : | |
| **LAURA WILLIAMS** | : | |
| Individually and through her official capacity, | : | |
| Warden, George Hill Correctional Facility | : | |
| 500 Cheyney Road Thornton, PA 19373 | : | |
| **and** | : | |
| **MICHAEL MOORE** | : | |
| Individually and through his official capacity, | : | |
| Classification Counsel, George Hill Correctional Facility | : | |
| 500 Cheyney Road Thornton, PA 19373 | : | |
| **and** | : | |
| **SGT. MOHAMMED FAKOLEE** | : | |
| Individually and through his official capacity, | : | |
| Correctional Officer, George Hill Correctional Facility | : | |
| 500 Cheyney Road Thornton, PA 19373 | : | |
| **and** | : | |
| **JOHN DOE, Corrections officer on duty 4/21/22** | : | |
| **at time of Funkhouser cell transfer** | : | |
| Individually and through his official capacity, | : | |
| Correctional Officer, George Hill Correctional Facility | : | |
| 500 Cheyney Road Thornton, PA 19373 | : | |
| **and** | : | |
| **WELLPATH LLC** | : | |
| 3340 Perimeter Drive | : | |
| Nashville, Tennessee, 37211 | : | |

**and**
**KRISTEN GRADY**                                                  :
Individually and through her official capacity,                   :
Wellpath Health Services Administrator                           :
500 Cheyney Road Thornton, PA 19373                              :
    **and**                                                      :
**SERENE EDDY**                                                  :
Individually and through her official capacity for Wellpath      :
500 Cheyney Road Thornton, PA 19373                              :
    **and**                                                      :
**JOHN OR JANE DOE, employed by Wellpath LLC**                   :
Individually and through their official capacity for Wellpath    :
500 Cheyney Road Thornton, PA 19373                              :
                                        **Defendants.**

---

## AMENDED COMPLAINT

This case involves the strangulation death of 54-year-old Elliott Naythan Funkhouser, Sr., ("Elliott Funkhouser", "Plaintiff" and/or "Mr. Funkhouser") who was being held in the George Hill Correctional Facility beginning in early April of 2022, for a probation violation. On April 21, 2022, Mr. Funkhouser was moved from cell Unit #8 to Unit #10A, where the prison houses inmates with mental health issues and disorders. Funkhouser was placed in a cell with inmate Shad Murray Boccella, who suffered from schizophrenia, paranoid delusions, violent outbursts and other documented mental infirmities known to the prison, making him dangerous to any cell mate. Despite the guard on duty advising the classification officer there existed no room for Funkhouser in unit #10A, Funkhouser was still transferred into unit 10A cell #105 the cell housing Boccella, who was classified as a "house alone rec. alone" inmate, meaning he should not be housed with other inmates. Funkhouser was placed in a cell with Boccella in the late afternoon of 4/21/22 and found strangled to death on the morning of 4/22/22 by Boccella.

This case seeks justice and damages for the tragic and unnecessary death of Elliott Naythan Funkhouser, Sr., when the defendants recklessly disregarded the known dangers of placing Funkhouser in a cell with Shad Murray Boccella, who had a history of mental disorders and violent tendencies and should not have been in a cell with any other inmates.

## JURISDICTION

1.      This action is brought pursuant to 42 U.S.C. §1983 and the Fourteenth (14th) Amendment to the United States Constitution.

2.      Jurisdiction is founded on 28 U.S.C. §§1331 and 1343(3) and the aforementioned statutory and constitution provisions.

3.      Jurisdiction lies over state law claims based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. §1367.

4.      The amount in controversy exclusive of interest and costs exceeds the sum of One Hundred and Fifty Thousand Dollars ($150,000.00).

## VENUE

5.      All of the claims herein arose within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and involve Defendants who either resided or conducted business within the jurisdictional limits. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §1391(b) and (c).

## PARTIES

6.       Plaintiffs in this matter are the Estate of Elliott Naythan Funkhouser, Sr., by and through Diane Funkhouser, the Administrator of the Estate of Elliott Naythan Funkhouser, Sr.

7.    Diane Funkhouser was the cousin of Elliott Naythan Funkhouser, Sr., and currently resides at 505 Langford Road Broomall, Pa 19008.

8.    Defendant, Delaware County, is a county and political subdivision, organized by and through the Commonwealth of Pennsylvania, with a business address of 201 West Front Street, Media, PA 19036.

9.    Defendant, Delaware County and its Council are empowered by the Commonwealth of Pennsylvania law to operate and maintain the George Hill Correctional Facility, located in Delaware County, PA.

10.    Defendant, Jail Oversight Board of Delaware County Pennsylvania (hereafter "Jail Oversight Board") is located at 500 Cheyney Road, Thornton, PA 19373 and has a mailing address of P.O. Box 23 Thornton, PA 19373.

11.    The Jail Oversight Board's administrative powers and duties include the operation and maintenance of the George Hill Correctional Facility and all associated alternative housing facilities, the oversight of the health and safekeeping of inmates and the confirmation of the Executive Director's selection of a Warden.

12.    The Jail Oversight Board is required to ensure the jail is being operated in accordance with its regulations and the laws and regulations of the Commonwealth of Pennsylvania and of the United States of America.

13.    Defendant, Laura Williams, at all times relevant hereto, was an adult individual, citizen, and resident of the Commonwealth of Pennsylvania, and was the George Hill Correctional Facilities' Warden employed by and acting in her capacity as the agent, servant and employee of either Defendant Delaware County and/or Defendant Geo Group.

14.    Defendant, Laura Williams, was empowered to enforce law, rules, regulations, policies and procedures in the George W. Hill Correctional Facility.

15.    Defendant, Laura Williams, was empowered to take official state action in her day-to-day tasks, which included the administration and operation of the George W. Hill Correctional Facility.

16.    At all times relevant, Defendant, Laura Williams, was an official of Defendant, Delaware County, and was acting under color of state law.

17.    At all times relevant, Defendant, Laura Williams, performed her actions while clothed with the authority of the state.

18.    At all times relevant hereto, Michael Moore, was an adult individual, citizen, and resident of the Commonwealth of Pennsylvania, and was employed by either Defendant Delaware County and/or Defendant GEO Group, working as an employee located at the George Hill Correctional Facility.

19.    Defendant, Michael Moore, was empowered to take official state action in his day-to-day tasks which included the administration services and operation of the George W. Hill Correctional Facility.

20.    At all times relevant, Defendant, Michael Moore, was an official of Defendant, Delaware County, and was acting under color of state law.

21.    At all times relevant, Defendant, Michael Moore, performed his actions while clothed with the authority of the state.

22.    At all times relevant hereto, Sergeant Mohammed Fakolee, was an adult individual, citizen and resident of the Commonwealth of Pennsylvania, and was employed

by defendant Delaware County as a correctional officer at the George Hill Correctional Facility.

23.     Defendant, Sgt. Mohammed Fakolee, was a corrections officer on duty in Unit #10 of the George Hill Correctional Facility on 4/21/22, at the time when Elliott Funkhouser was transferred from cell unit #8 and placed into a cell with Boccella in cell unit #10A.

24.     Defendant, Sgt. Mohammed Fakolee, was acting under color of state law at the time of placement of Funkhouser and Boccella in the same cell.

25.     Defendant John Doe (name unknown to plaintiff) was a George Hill corrections officer on duty in Unit #10A of the prison facility on 4/21/22, at the time when Elliott Funkhouser was transferred from cell unit #8 and placed into a cell with Boccella in unit #10A.

26.     John Doe correctional officer was the officer on duty and assigned to unit #10A at the time Funkhouser when transferred from cell unit #8 to unit #10A and placed into a cell with Boccella.

27.     At the time of placement of Funkhouser with Boccella, John Doe correctional officer, was acting under color of state law.

28.     Defendant Wellpath is a privately owned health care company with a principal headquarters located at 3340 Perimeter Drive, Nashville, TN, 37211.

29.     At all times relevant herein, Wellpath provided healthcare services to the George Hill Correctional Facility.

30.     Wellpath was engaged by Delaware County to provide, in part, mental health services to the inmates and to advise and assist the prison in prisoner

classifications, such as violent tendencies and whether the inmate should be classified as "house alone/rec. alone" or be in the prison general population.

31.     At all times relevant hereto, Kristen Grady, was an adult individual, citizen and resident of the Commonwealth of Pennsylvania, and was employed by defendant Wellpath as a Health Services Administrator working at the George Hill Correctional Facility.

32.     Defendant, Kristen Grady, oversees medical department operations and the services, including those relative to mental health, offered to the jail population.

33.     Defendant, Kristen Grady, was acting under color of state law in administering the health services of the George Hill Correctional Facility.

34.     At all times relevant hereto, Defendant, Serene Eddy, was an adult individual, citizen and resident of the Commonwealth of Pennsylvania, and was employed by Defendant Wellpath and working at the George Hill Correctional Facility.

35.     Defendant, Serene Eddy, is responsible for ensuring that inmates receive their proper medication and take said medication.

36.     Defendant, Serene Eddy, was acting under color of state law in providing health services to inmates of the George Hill Correctional Facility.

37.     At all times relevant hereto, Defendant John or Jane Doe, was an adult individual, citizen and resident of the Commonwealth of Pennsylvania, and was employed by Defendant Wellpath and working at the George Hill Correctional Facility providing health services to inmates.

38.     Defendant, John or Jane Doe, is responsible for ensuring that inmates receive their proper medication and take said medication.

39.    Defendant, John or Jane Doe, was acting under color of state law in providing medical services to inmates of the George Hill Correctional Facility.

## FACTS

## NON-PARTY SHAD MURRAY BOCCELLA HISTORY

40.    Non-Party, Shad Murray Boccella, is currently charged with the murder of Elliott Funkhouser, Sr., Delaware County Docket Number CP-23-CR-3377-2022, currently listed for a trial in the Delaware County Court of Common Pleas for August 5, 2024.

41.    Prior to the murder/killing of Mr. Funkhouser, Mr. Boccella was already incarcerated in the George Hill Correctional Facility, beginning early in 2022, stemming from an arrest relative to Delaware County Common Pleas Docket Number CR-870-2022.

42.    On 3/16/22, more than one month prior to the killing of Mr. Funkhouser, inmate Boccella was scheduled to appear for a formal arraignment in the Delaware County Court of Common Pleas by remote video, wherein Mr. Boccella would be transported from his cell to a room in the George Hill Correctional Facility equipped with video and microphone capabilities to be formally arraigned.

43.    On that same date, 3/16/22, the correctional officers, then employed by Defendant, GEO Group, informed the Court and Mr. Boccella's criminal defense attorney, that Mr. Boccella was incapable of being transported for his arraignment due to his dangerous and erratic behavior. The arraignment was conducted in Mr. Boccella's absence.

44.    On 3/21/22, following the completion of the arraignment, Mr. Boccella's criminal defense attorney filed an Application for a Competency Examination, with said application being granted on 3/25/22.

45.    Ultimately a competency analysis was performed by a state appointee on April 21, 2022, the day before the murder/killing of Elliott Funkhouser.

46.    In the competency analysis, Mr. Boccella was described as schizophrenic, paranoid, delusional, and hearing voices. He was considered a high-risk inmate and incompetent to stand trial at that time.

47.    It is believed and therefore averred that Mr. Boccella was denied the appropriate attention, treatment and medication to treat the symptoms of his mental illness.

48.    It is believed and therefore averred that there existed instructions and/or warnings relative to Mr. Boccella, that he was not to be housed with fellow inmates, due to his mental issues and predilection for violence.

49.    Mr. Boccella was housed in Unit 10A at the George Hill Correctional Facility, a unit for those inmates that require special attention due to their known mental health needs.

50.    Mr. Boccella and Mr. Funkhouser were both incarcerated when the George Hill Correctional Facility transitioned from being managed by Defendant, GEO Group to being managed by Defendant, Delaware County.

51.    There exists a special relationship between inmates and a correctional facility, as the inmates are not voluntarily in the custody of the state, and thus the facility

has a responsibility for the health care of the inmates, including mental health care and are acting under color of state law in their treatment of inmates.

52.    At all times prior to the transfer of control of the prison on 4/6/22, the Defendant, GEO Group, provided inmates, including Boccella, with health care services, including mental health care.

53.    At the time of Mr. Boccella's initial arrest and the arraignment in March of 2022, Defendant GEO Group, was the manager and/or operator of the George Hill Correctional Facility.

54.    During GEO Group's management and control of George Hill Correctional Facility, Boccella was disruptive, delusional and violent sufficient to alert the employees of the GEO Group that Boccella needed mental health treatment.

55.    Defendant, GEO Group, was aware that Boccella was suffering from schizophrenia, accompanying delusions, paranoia, was hearing voices making him a dangerous inmate and in significant need of treatment and medications to alleviate and control his mental illness.

56.    Defendant, GEO Group, failed to properly treat Boccella's mental disorder to alleviate the risk that he posed to any cellmate and staff.

57.    It is further believed and therefore averred that the abrupt and disorganized transition of control of the prison from the Geo Group back to Delaware County resulted in the Defendants not properly relaying the full extent of the degree to Boccella's mental infirmities and corresponding dangers.

58.    Defendant, Wellpath, was hired by the defendant Delaware County to provide health care to the prisoners in March of 2022 prior to the transfer of the control of the prison from Geo Group to Delaware County.

59.    Wellpath was required to provide mental health care to prisoners, including Boccella.

60.    Wellpath was required to assess and treat Boccella prior to 4/21/22.

61.    Wellpath failed to adequately properly assess and treat Boccella's mental condition, making him more dangerous to Funkhouser had his assessment and treatment been performed properly.

62.    Defendants, Wellpath, by and through its agents and employees, including Defendants, Kristen Grady, Serene Eddy, and John or Jane Doe health providers, have assumed and/or contracted to provide for mental health treatment of inmates, including Boccella while at the George Hill Correctional Facility.

63.    It is believed and therefore averred, that Defendant, Wellpath was or should have been aware that Shad Murray Boccella was not to be housed with any other inmates and failed to detect or warn against the severity and degree of Boccella's mental health issues and dangerous proclivities toward cell mates.

64.    Defendant, Wellpath, failed to properly treat Boccella's mental disorder to alleviate the extreme risk he posed to any cellmate and prison staff.

65.    Defendant, Wellpath, failed to properly assess Boccella's mental state sufficient to properly warn the prison of the danger Boccella posed if his house alone designation would be ignored.

66.    Defendants, Serene Eddy, Kristen Grady, and Jane or John Doe employee of Wellpath, failed to ensure that Boccella received and ingested his medicine for his mental illness diagnosis.

## ELLIOTT NAYTHAN FUNKHOUSER, SR. INCARCERATION

67.    On April 3, 2022, Elliott Funkhouser, was arrested due to a parole violation on Delaware Criminal Docket Number 6491-2013.  The underlying arrest has a docket number of MJ-32127-CR-85-2022, said docket has now been classified as "limited access."

68.    Pending the disposition of the underlying charges and parole violation, Mr. Funkhouser was placed in incarceration at the George Hill Correctional Facility, located at 500 Cheyney Road, Thornton, PA 19373.

69.    At the time of Mr. Funkhouser's arrest, Defendant GEO Group was the operator or managing entity of the George Hill Correctional Facility.

70.    On April 6, 2022, Defendant GEO Group ceased management of the George Hill Correctional Facility, with Delaware County taking control of the management and operation of the incarceration facility.

71.    On April 21, 2022, defendant Michael Moore, had the duty to classify prisoners for assignment to a cell mate or to be designated "house alone/rec. alone."

72.    On April 21, 2022, Defendant Moore contacted the guard on duty in Cell block #10A seeking to transfer Elliott Funkhouser to cell block 10A from cell block 8.

73.    Defendant, Michael Moore, at all times relevant herein was working as the "classification counsel" at the George Hill Correctional Facility, who was in charge of placement of inmates in their respective cells.

74.     The guard assigned to prison block #10A advised Moore that there was no free cell space on block #10A as one-half of the 10A cells were full with two (2) inmates per cell and the remaining one-half of cells were all designated as "house alone/rec alone," meaning the inmate should not have a cellmate and be provided recreation time alone.

75.     Upon information and belief, despite there being no cell for Funkhouser to be safely placed in block #10A, Funkhouser was transferred and assigned to block #10A and placed in cell 105 with Boccella, who was designated as "house alone/rec. alone" and known to be dangerous.

76.     Defendant, Moore, who had the authority at the prison to classify and assign inmates, acted in combination with John Doe corrections officer, assigned to block #10A at the time of Funkhouser's transfer, and Sgt. Mohammed Fakolee, the supervising correctional officer for block #10A at the time of Funkhouser's transfer and placement into the cell already occupied by Boccella.

77.     It is believed and therefore averred, that Defendants, Michael Moore, John Doe correctional officer and Mohammed Fakolee were all aware that Boccella was too dangerous to be housed with any other inmates, and contrary to this known danger, were recklessly indifferent to the health and well-being of Funkhouser and placed him into a cell with  Boccella who killed him within hours of Funkhouser's placement with Boccella.

## ELLIOTT NAYTHAN FUNKHOUSER, SR. DEATH

78.     On the evening of April 21, 2022, Elliott Funkhouser was moved from cell block 8 to cell block 10A at the direction of defendant Michael Moore.

79.    On the morning of April 22, 2022, correctional officers, Edward Collins and Fred Pascale, found Elliott Funkhouser, Sr., lying face down on the bottom bunk of his cell wrapped very tightly in sheets and blankets.

80.    Mr. Funkhouser was unresponsive and cold to the touch, later to be deemed dead, with a cause of death listed as ligature strangulation.

81.    The correctional officers noted that they believed a sheet found on Mr. Funkhouser's chest was formed to make a "noose", with Mr. Funkhouser having a red mark around his neck and blood on his mouth.

82.    It is believed and therefore averred, that Mr. Boccella admitted to strangling Mr. Funkhouser, and that after strangling Funkhouser to death, Boccella took Mr. Funkhouser's shoes and was wearing them when discovered.

83.    Boccella had participated in a competency evaluation earlier on the day of 4/21/22 and was not wearing shoes or socks.

84.    It is averred and believed that Boccella was not provided proper shoes to wear by the prison.

85.    The George Hill Correctional Facility staff, which was operated by Defendant Delaware County after April 6th, 2022, failed to adhere to standard policy, practices and overt warnings not to place inmate Boccella in a cell with any other inmate due to his violent tendencies.

86.    At the time of placing Funkhouser and Boccella in the same cell, Defendants knew or should have known that Funkhouser was at an increased risk of physical violence perpetrated upon him by Boccella.

87.    At the time of placing Elliott Funkhouser and Boccella in the same cell, Defendants knew or should have known that Boccella was suffering from mental illness and/or disorders and/or had a predilection for violent tendencies toward others including cellmates.

88.    Despite the duty to do so, the defendants took no precautionary actions to ensure that Elliott Funkhouser would not be harmed by his fellow inmate, Boccella.

89.    Despite George Hill's own policies and practices, the facility failed to take any precautionary action to ensure that Boccella did not harm any other inmates, including Elliott Funkhouser.

90.    Defendant, Delaware County, had no administrative structure, organization, policies and procedures to ensure that an inmate such as Boccella would not harm another inmate, including but not limited to, access to mental health care, intake screening, interviewing incoming detainees, monitoring of cells, and had inadequate staff training.

91.    The lack of these procedures and policies and/or alternatively, if the policies and procedures existed, the lack of implementation and enforcement because of custom and habit of not following and enforcing these policies and procedures was a contributing factor to the death of Elliott Funkhouser.

92.    Had the prison heeded the guard's notice of full capacity in cell block 10A and had not disregarded the listed "house alone/rec. alone" status of Boccella and placed Funkhouser in a cell with Boccella, then Funkhouser would still be alive today.

93.    Defendant Moore, John Doe correctional officer and defendant supervisor Fakolee, assigned to block #10A at the time of the Funkhouser transfer to block #10A

recklessly disregarded the "house alone/rec alone" designation of Boccella and the accompanying risk assessments concerning, but not limited to, the risk of harm Boccella posed to other inmates.

94.    Defendants' failure to perform and/or willingness to ignore any intake, mental assessment and/or prisoner classification was intentional, deliberate, indifferent, reckless, and grossly negligent.

95.    Defendants, each of them, acted with reckless indifference to the threat posed by Boccella as it related to Elliott Funkhouser.

96.    Elliott Funkhouser did not die immediately but suffered emotional and physical pain before dying.

97.    Defendants deprived Elliott Funkhouser of his basic rights of life, liberty and and to be free from cruel and unusual punishment.

98.    Defendants denied Elliott Funkhouser the care and dignity required to be afforded to all humans, despite being incarcerated.

99.    Had defendants simply performed a more thorough mental health assessment and properly treated Boccella's mental condition or followed their own assessment as to the threat posed by Boccella, then the loss of Elliott Funkhouser's life could have been avoided.

100.    The defendants' failure to protect Elliott Funkhouser from the violent tendencies of Boccella, that were known or should have been known, is not only reckless and grossly negligent, but indicative of extreme cold-heartedness and indifference to obvious needs of inmates entrusted to their charge.

101.   The overall structure and organization and lack of implementation of any policy by Defendants to assess the risk of inmates, such as Boccella, to harm to other inmates in their exclusive custody and control was grossly reckless and deliberately indifferent to the health needs, and safety and well-being needs of Elliott Funkhouser.

102.   Ensuring inmate protection from other inmates is the responsibility of the administrative and custodial staff including specifically the above-named Defendants.

103.   Defendants failed to train their staff in any regard whatsoever concerning the risk posed by mentally unstable and/or violent inmates, such as Boccella.

104.   The actions and inactions by Defendants were a factual cause of the death of Elliott Funkhouser.

105.   Defendants failed to communicate and confer with each other regarding observations and interactions with Boccella sufficient to alert others of a heightened need for monitoring of Boccella so that he did not pose a threat to other inmates.

106.   Defendants failed to prioritize the most important primary aspect of an inmate's detention, their safety.

107.   Defendants failed to assign turnkey personnel to monitor video feed of the cell housing inmates Elliott Funkhouser and Boccella.

108.   Defendants failed to keep a log of visual and personal checks and observations of the cell housing inmates Funkhouser and Boccella after knowingly assigning any cellmate to Boccella.

109.   Defendant, Delaware County supported, facilitated and caused a violation of Elliott Funkhouser's constitutional rights through their acts, inaction, executed policy,

regulation and officially adopted decisions or informally adopted customs which inflicted transgressions upon the constitutional rights of Elliott Funkhouser.

110.    Defendant, Delaware County, fostered an atmosphere and custom of failure to follow protocols required for detainees and/or inmates.

111.    The correctional facility officers and other agents, employees, and/or workmen, including classification counsel of Defendant, Delaware County, were or should have been trained to recognize signs and information that may indicate that an incarcerated individual, such as Boccella, was at an increased risk of harming other inmates, such as Elliott Funkhouser, and taken precautionary measures or recommended that they be taken.

112.    At all times material hereto, Defendants had a duty to act to prevent inmates from harming other inmates within their custody, by and through measures including appropriate placement of inmates, sensitivity, communication, surveillance, supervision, referrals and mental health care and assessment.

113.    Elliott Funkhouser's death was preventable, had Defendants exercised any caution or care for Funkhouser, while he was under their care, custody and control, including not placing Mr. Funkhouser in a cell with Boccella.

114.    The injuries and damages suffered by Elliott Funkhouser and Plaintiffs were directly and proximately caused by the acts and/or omissions of Defendants, jointly and severally, individually, or by and through their agents, servants and/or employees.

115.    The acts and/or omissions of all Defendants, jointly and severally, directly factually and proximately caused and/or increased the risk of harm and death suffered by Elliott Funkhouser.

116.    As a direct and proximate result of the negligence of all Defendants, jointly and severally, as well as the negligence of their agents, servants, and/or employees, Elliott Funkhouser was caused to experience damages which included the following:

      a.    Pain and suffering.
      b.    Emotional trauma.
      c.    Fear and fright.
      d.    Humiliation and embarrassment.
      e.    Economic loss.
      f.    Wage loss and loss of future earning capacity.
      g.    Medical bills and funeral expenses.
      h.    Loss of Life/Death.

**COUNT I**
**CIVIL RIGHTS – 42 U.S.C. §1983**
**STATE CREATED DANGER AND DELIBERATE INDIFFERENCE CLAIMS**
**Plaintiffs v. Defendants, Laura Williams, Michael Moore, Sgt. Mohammed Fakolee, John Doe Corrections Officer, Kristen Grady, Serene Eddy, and John or <u>Jane Doe Employee of WellPath</u>**

117.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

118.    The grossly negligent and reckless conduct of Defendants, each of them, as set forth above, acting under color of state law, harmed Plaintiff as set forth in this complaint.

119.    The Count 1 defendants were recklessly indifferent to the safety, health, medical, bodily integrity, and well-being needs of Elliott Funkhouser.

120.    The Count 1 defendants consciously disregard the substantial and/or unjustifiable risk of harm to Elliott Funkhouser and was so egregious as to shock the conscience.

121.    The conduct of the Count 1 defendants as set forth above, violated Elliott Funkhouser's constitutional rights while in pre-trial custody, particularly rights to be free

from cruel and unusual punishment, rights to be free from state created danger, and to substantive and procedural due process, as guaranteed to pre-trial detainees by the Fourteenth Amendment of the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

122.    The conduct of Defendants acting under cover of law, created a dangerous situation by willfully disregarding the safety of Elliott Funkhouser thereby causing foreseeable and direct harm to his life, liberty and pursuit of happiness.

123.    The conduct of the count 1 defendants acting under cover of law was reckless and grossly negligent as aforesaid.

124.    The Count 1 defendants' affirmative actions, as described above, were an exercise and misuse of Defendants' authority in a way that created danger to Elliott Funkhouser and rendered him more vulnerable to danger, which danger in fact occurred resulting in his death.

125.    The conduct of Defendants as set forth above violated Elliott Funkhouser's constitutional rights while he was in custody as specified:

      a.    His right to be free from deliberate indifference to the substantial risk of harm.

      b.    His rights pursuant to the due process clause of the Fourteenth Amendment to the United States Constitution.

      c.    His right to be free from deliberate indifference to his serious safety needs, health needs, bodily integrity and well-being needs.

      d.    His rights to substantive and procedural due process as guaranteed by the Fourteenth Amendment of the United States Constitution.

      e.    His right to be free from state created danger pursuant to the due process clause of the Fourteenth Amendment of the United States Constitution; and

      f.    His right to be free from danger and harm caused by another inmate, of which the Defendants were aware had violent tendencies toward cellmates and placing Funkhouser in a locked cell with Boccella without supervision.

126.    As a direct and proximate result of the acts and omissions of all individual Count 1 defendants, in their official capacities, are liable for the harm sustained by Elliott Funkhouser.

127.    Defendants, each of them, whose actions, conduct and failure to act, placed Elliott Funkhouser in grave harm, are liable in their individual capacities for the injuries sustained.

128.    Plaintiffs, as Administrators of the Estate of Elliott Funkhouser, request damages on behalf of Elliott Funkhouser's heirs in accordance with 42 USC §1983.

129.    As a direct and proximate result of the violations of Elliott Funkhouser's civil rights, he was caused to suffer grievous physical injuries and death as set forth above and herein.

WHEREFORE, Plaintiffs demand judgment in their favor and against all listed Defendants of Count 1, individually and/or jointly and severely, in excess of $150,000.00, exclusive of interest and costs, which sum includes but is not limited to:

      a.  A compensatory damage award.
      b.  Reasonable attorney's fees and costs.
      c.  Reasonable past medical and funeral expenses.
      d.  Past and future lost wages.
      e.  Damages for pain and suffering.
      f.  Compensation for the loss of his life.
      g.  Punitive damages against the individual Defendants.
      h.  All other damages recoverable under 42 U.S.C. §1983.
      i.  Such other and reasonable and just relief as is available under the law.

**COUNT II**
**CIVIL RIGHTS – 42 U.S.C. §1983**
**MONELL CLAIM**
**Plaintiffs v. Defendants, Delaware County, the Jail Oversight Board of**
**Delaware County, GEO Group, Inc., Wellpath LLC**

130.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

131.    Defendant, GEO Group, was responsible for the safe detention of pre-trial detainees at the George Hill Correctional Facility prior to April 6th, 2022.

132.    Prior to March 6th, 2022, GEO Group provided medical care and services to the inmates of the George Hill Correctional Facility.

133.    Both Boccella and Funkhouser were incarcerated while Defendant GEO Group was still responsible for the management of the facility, including the care and medical needs of the inmates.

134.    Defendant, GEO Group, was aware of inmate, Boccella's mental illness and dangerous proclivities.

135.    Defendant, GEO Group, was responsible for treating Boccella for his mental illness and documenting said treatment.

136.    Defendant, GEO Group's failed to provide proper mental health care and assessment of inmate Boccella while under their care, making his schizophrenia more acute and Mr. Boccella more dangerous.

137.    Defendant, GEO Group's failed to provide defendant, Delaware County proper mental health information concerning Boccella during the transition of control of the jail.

138.    Beginning on March 6th, 2022, in anticipation of the impending Delaware County management of the George Hill Correctional Facility, Defendant Wellpath LLC, entered into a contract for and began providing health services to the inmates of the facility, including providing mental health services.

139.    Defendants, Delaware County, the Jail Oversight Board of Delaware County, and Wellpath LLC were responsible for the safe detention of pre-trial detainees at the George Hill Correctional Facility after April 6th, 2022, including the time Elliott Funkhouser was murdered by his cellmate Boccella.

140.    Defendants, Delaware County and the Jail Oversight Board of Delaware County failed to provide policies, procedures, protocols and/or other employee training to ensure the safety of pre-trial detainees in the county jail, and in particular, policies, procedures, protocols and/or other employee training concerning how detainees should be assessed for harm to other inmates and paired up in cells.

141.    Defendants, Delaware County and the Jail Oversight Board of Delaware County failed to provide policies, procedures, protocols and/or other employee training to ensure the safety of pre-trial detainees in the county jail, and in particular, policies, procedures, protocols and/or other employee training concerning classification and cell assignment of detainees who are deemed a risk to harm other inmates and should be housed separately to prevent harm to other inmates.

142.    Said policies, procedures, protocols and/or other employee training are necessary for assessing and preventing the risk of serious injury including death to detainees such as Elliott Funkhouser while in the exclusive custody and control of Defendants.

143.    Defendants, Delaware County and the Jail Oversight Board of Delaware County failed to provide policies, procedures, protocols and/or other employee training to assess the safety needs of detainees such as Elliott Funkhouser, when under the sole custody and control of Defendants and monitoring procedures when detaining a pre-trial arrestee in the George Hill Correctional jail cell.

144.    Defendants, Delaware County and the Jail Oversight Board of Delaware County failed, despite being aware of the risk that fellow inmate, Boccella posed to other inmates, did not make any changes to policies practices, and procedures or the housing of inmates that would prevent the inmate-on-inmate violence that resulted in the death of Plaintiff, Elliott Funkhouser.

145.    Defendants, Delaware County and the Jail Oversight Board of Delaware County's failure to enact the previously described policies, procedures, protocols and/or other employee training constituted denial of Elliott Funkhouser's constitutionally protected civil rights and demonstrate deliberate indifference to Elliott Funkhouser's safety needs and well-being needs, while in the exclusive control of Defendants and such actions resulted in the death of Elliott Funkhouser.

146.    Defendants, Delaware County and the Jail Oversight Board of Delaware County, as set forth above, acting under color of state law, was negligent, reckless and deliberately indifferent to the safety needs, health needs, well-being needs, medical needs and bodily integrity needs of Elliott Funkhouser and was committed in conscious disregard of the substantial risk and/or unjustifiable risk of causing harm including death to Elliott Funkhouser, and was conduct which arises to willful misconduct and/or gross negligence, and was so egregious as to shock the conscience.

147.    The conduct of Defendants, Delaware County, the Jail Oversight Board of Delaware County, GEO Group and WellPath, as set forth above, violated Elliott Funkhouser's constitutional rights while in exclusive custody.

148.    As a direct and proximate result of the acts and omissions of Defendants, Delaware County, the Jail Oversight Board of Delaware County, GEO Group and WellPath, said Defendants are liable for the harm and death caused to Elliott Funkhouser.

149.    As it applies to Defendants, Delaware County, the Jail Oversight Board of Delaware County, GEO Group and Wellpath:

    a.    They had actual or constructive knowledge that they and/or their subordinates were engaged in conduct which posed a pervasive and unreasonable risk of constitutional injury to Elliott Funkhouser under the circumstances previously described herein.

    b.    Their response to that knowledge was so inadequate as to demonstrate deliberate indifference to or tacit authorization of the alleged dangerous and offensive practices pertaining to the detention of pre-trial detainees under the circumstances previously described herein; and

    c.    The policy and custom of not abiding by or enforcing policies, if any, concerning the handling, monitoring, safety, assessment and well-being of detainees demonstrated deliberate indifference to and/or tacit authorization of the dangerous and offensive practices pertaining to the detention of pre-trial detainees including Elliott Funkhouser.

    d.    The policy and custom of accepting the admission of additional detainees when the inmate population exceeds the prison's capacity to properly house the inmates, requiring the prison staff to ignore and violate their own inmate classification status in place as "house alone," such as Boccella, with a cell mate, exposing the transferred inmate to great harm and death.

150.    These actions and/or inactions had a direct causal link to the constitutional injury, harm and death suffered by Elliott Funkhouser.

151.    Defendants, Delaware County, the Jail Oversight Board of Delaware County, GEO Group and WellPath, developed and maintained a number of deficient policies and/or customs which caused the deprivation of Elliott Funkhouser's constitutional rights aforesaid.  Said policies or customs were a direct and proximate cause of the constitutional harm, injuries and death suffered by Elliott Funkhouser as aforesaid.

152.    As a direct and proximate result of the violation of Elliott Funkhouser's civil and constitutional rights, he was caused to suffer grievous physical injuries including death as set forth above and herein.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, Delaware County, the Jail Oversight Board of Delaware County, Wellpath LLC, and GEO Group, Inc., in excess of $150,000.00, exclusive of interest and costs, which sum includes, but is not limited to:

a.    A compensatory damage award.
b.    Reasonable attorney's fees and costs.
c.    Reasonable past medical and funeral expenses.
d.    Past and future lost wages.
e.    Damages for pain and suffering.
f.    Compensation for the loss of life.
g.    Punitive damages against the individual Defendants.
h.    All other damages recoverable under 42 U.S.C. §1983.
i.    Such other and reasonable and just relief as is available under the law.

**COUNT III**
**PENNSYLVANIA WRONGFUL DEATH AND SURVIVOR ACT**
**Estate of Elliott Naythan Funkhouser Sr.  v. All Defendants**

153.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

154.    As a direct result of the Defendants' actions, Elliott Funkhouser suffered the injuries, damages, and untimely death described herein.

155.    The Estate of Elliott Naythan Funkhouser Sr. seeks damages under 42 Pa.C.S. §8301 et seq. for wrongful death and 42 Pa.C.S. §8301 et seq. for survivor damages, including but not limited to, the loss of her services, protections, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, as well as for their severe emotional distress and mental health anguish caused by this loss, as well as for funeral expenses and damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against all Defendants, individually and/or jointly and severely, in excess of $150,000.00, exclusive of interest and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment in their favor and against all Defendants, individually and/or jointly and severely, in excess of $150,000.00, exclusive of interest and costs, which sum includes but is not limited to:

a.  A compensatory damage award.
b.  Reasonable past medical and funeral expenses.
c.  Past and future lost wages.
d.  Damages for pain and suffering.
e.  Punitive damages against the individual Defendants.
f.  Damages pursuant to Pennsylvania Wrongful Death Act, 42 Pa.C.S. §8301.
g.  Damages pursuant to the PA. Survival Act, 42 Pa.C.S. §8302; and
h.  Such other and reasonable and just relief as is available under the law.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all claims and issues so triable.

Respectfully submitted,

Date: 4/17/2024            BY:    */s/ Michael LaRosa*
                                      MICHAEL LaROSA, ESQUIRE
                                      Attorney ID Number: 50011
                                      LaRosa Law Firm
                                      959 West Chester Pike
                                      Havertown, PA 19083
                                      Phone: 610-924-0999
                                      Fax: 610-924-0473
                                      Email: ml@larosalawfirm.com
                                      Counsel for Plaintiffs

## VERIFICATION OF PLAINTIFF DIANE MARIE FUNKHOUSER

I, **Diane Marie Funkhouser, Executrix of the Estate of Elliott Nathanal Funkhouser Sr**., do herein swear and affirm Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:

(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law.

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the complaint otherwise complies with the requirements of Rule 11.

Date: 4/17/2024

**DIANE MARIE FUNKHOUSER**
Executor of the Estate of
Elliot Funkhouser.