**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ESTATE OF ELLIOTT NAYTHAN FUNKHOUSER, SR.** | : | |
| **BY AND THROUGH DIANE MARIE FUNKHOUSER** | : | **CIVIL ACTION** |
| **ADMINISTRATOR OF THE ESTATE OF** | : | **No.: 2:24-cv-1091** |
| **ELLIOTT NAYTHAN FUNKHOUSER, SR.** | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| | : | **JURY TRIAL** |
| **DELAWARE COUNTY** | : | **DEMANDED** |
| 201 West Front Street, Media, PA 19036 | : | |
| **and** | : | |
| **GEO GROUP, INC.** | : | |
| 4955 Technology Way | : | |
| Boca Raton, FL 33431 | : | |
| **and** | : | |
| **JAIL OVERSIGHT BOARD OF DELAWARE** | : | |
| **COUNTY PENNSYLVANIA** | : | |
| 500 Cheyney Road Thornton, PA 19373 | : | |
| **and** | : | |
| **LAURA WILLIAMS** | : | |
| Individually and through her official capacity, | : | |
| Warden, George Hill Correctional Facility | : | |
| 500 Cheyney Road Thornton, PA 19373 | : | |
| **and** | : | |
| **MICHAEL MOORE** | : | |
| Individually and through his official capacity, | : | |
| Classification Counsel, George Hill Correctional Facility | : | |
| 500 Cheyney Road Thornton, PA 19373 | : | |
| **and** | : | |
| **SGT. MOHAMMED FAKOLEE** | : | |
| Individually and through his official capacity, | : | |
| Correctional Officer, George Hill Correctional Facility | : | |
| 500 Cheyney Road Thornton, PA 19373 | : | |
| **and** | : | |
| **S.BROWNELL, Corrections officer on** | : | |
| **duty 4/21/22 at time of Funkhouser cell transfer** | : | |
| Individually and through his official capacity, | : | |
| Correctional Officer, George Hill Correctional Facility | : | |
| 500 Cheyney Road Thornton, PA 19373 | : | |
| **and** | : | |
| **WELLPATH LLC** | : | |
| 3340 Perimeter Drive | : | |
| Nashville, Tennessee, 37211 | : | |

|                                                              |   |
|--------------------------------------------------------------|---|
| **and**                                                      | : |
| **KRISTEN GRADY**                                            | : |
| Individually and through her official capacity,              | : |
| Wellpath Health Services Administrator                       | : |
| 500 Cheyney Road Thornton, PA 19373                          | : |
| **and**                                                      | : |
| **SERENE EDDY**                                              | : |
| Individually and through her official capacity for Wellpath  | : |
| 500 Cheyney Road Thornton, PA 19373                          | : |
| **and**                                                      | : |
| **NINA CHYCHULA AND MEGAN**                                  | : |
| **GILBERT employees of both the Geo Group**                  | : |
| **And Wellpath LLC**                                         | : |
| Individually and through their official capacity for Wellpath| : |
| 500 Cheyney Road Thornton, PA 19373                          | : |
|                                         **Defendants.**      |   |

---

## SECOND AMENDED COMPLAINT

This case involves the strangulation death of 54-year-old Elliott Naythan Funkhouser, Sr., ("Elliott Funkhouser", "Plaintiff" and/or "Funkhouser") who was being held in the George Hill Correctional Facility beginning in early April of 2022, for a probation violation. On April 21, 2022, Mr. Funkhouser was moved from cell Unit #8 to Unit #10A, where the prison houses inmates with mental health issues and disorders.

Funkhouser was placed in a cell with inmate Shad Murray Boccella, who was identified and known to the prison mental health unit and correctional officers as a risk of harm to the staff and other inmates from his initial inmate screening on 2/9/22 and throughout his incarceration. Despite the aforesaid, the prison's cell assignment system and cell classification officer, defendant Michael Moore, did not recognize or record Boccella as a safety risk to other inmates. Ignoring warnings from the corrections officer assigned to the first shift in the mental in unit #10A, Moore transferred Funkhouser into unit 10A and he was placed in cell #105, the cell housing Boccella. Funkhouser was

placed in a cell with Boccella at approximately 9 p.m. on 4/21/22 and he was found strangled to death on the morning of 4/22/22 by Boccella.

This case seeks justice the correction of improper and lacking cell classification practices, policies and procedures as well as damages for the tragic, horrific and unnecessary death of Elliott Naythan Funkhouser, Sr., when the defendants recklessly disregarded the known dangers of placing Funkhouser in a cell with Shad Murray Boccella, who had a history of mental disorders and violent tendencies and should not have been housed in a cell with any other inmates.

### JURISDICTION

1.      This action is brought pursuant to 42 U.S.C. §1983 and the Fourteenth (14th) Amendment to the United States Constitution.

2.      Jurisdiction is founded on 28 U.S.C. §§1331 and 1343(3) and the aforementioned statutory and constitution provisions.

3.      Jurisdiction lies over state law claims based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. §1367.

4.      The amount in controversy exclusive of interest and costs exceeds the sum of One Hundred and Fifty Thousand Dollars ($150,000.00).

### VENUE

5.      All of the claims herein arose within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and involve Defendants who either resided or conducted business within the jurisdictional limits. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §1391(b) and (c).

**PARTIES**

6.    Plaintiffs in this matter are the Estate of Elliott Naythan Funkhouser, Sr., by and through Diane Funkhouser, the Administrator of the Estate of Elliott Naythan Funkhouser, Sr.

7.    Diane Funkhouser was the cousin of Elliott Naythan Funkhouser, Sr., and currently resides at 505 Langford Road Broomall, Pa 19008.

8.    Defendant, Delaware County, is a county and political subdivision, organized by and through the Commonwealth of Pennsylvania, with a business address of 201 West Front Street, Media, PA 19036.

9.    Defendant, Delaware County and its Council are empowered by the Commonwealth of Pennsylvania law to operate and maintain the George Hill Correctional Facility, located in Delaware County, PA from April 6th 2022 and thereafter.

10.    Defendant, GEO Group, Inc. ("Geo Group") is a Florida corporation, acting under color of state law and authorized by Delaware County to do so, managed and/or operated the subject prison in the year 2022, until April 6, 2022, and was responsible for the management of the George Hill Correctional Facility located at 500 Cheyney Road, Thornton, PA 19373 during that time period.  GEO Group's headquarters are located at 4955 Technology Way, Boca Raton, FL 33431.

11.    Defendant, Jail Oversight Board of Delaware County Pennsylvania (hereafter "Jail Oversight Board") is located at 500 Cheyney Road, Thornton, PA 19373 and has a mailing address of P.O. Box 23 Thornton, PA 19373.

12.    The Jail Oversight Board's administrative powers and duties include the operation and maintenance of the George Hill Correctional Facility and all associated

alternative housing facilities, the oversight of the health and safekeeping of inmates and the confirmation of the Executive Director's selection of a Warden.

13. The Jail Oversight Board is required to ensure the jail is being operated in accordance with its regulations and the laws and regulations of the Commonwealth of Pennsylvania and of the United States of America.

14. Defendant, Laura Williams, at all times relevant hereto, was an adult individual, citizen, and resident of the Commonwealth of Pennsylvania, and was the George Hill Correctional Facilities' Warden employed by and acting in her capacity as the agent, servant and employee of either Defendant Delaware County and/or Defendant Geo Group.

15. Defendant, Laura Williams, was empowered to enforce law, rules, regulations, policies and procedures in the George W. Hill Correctional Facility.

16. Defendant, Laura Williams, was empowered to take official state action in her day-to-day tasks, which included the administration and operation of the George W. Hill Correctional Facility.

17. At all times relevant, Defendant, Laura Williams, was an official of Defendant, Delaware County, and was acting under color of state law.

18. At all times relevant, Defendant, Laura Williams, performed her actions while clothed with the authority of the state.

19. At all times relevant hereto, Michael Moore, was an adult individual, citizen, and resident of the Commonwealth of Pennsylvania, and was employed by both Defendant GEO Group prior to 4/6/2022 and by defendant Delaware County after 4/6/22, working as the cell classification officer at the George Hill Correctional Facility.

20. Defendant, Michael Moore, was empowered to take official state action in his day-to-day tasks which included the administration services and operation of the George W. Hill Correctional Facility.

21. At all times relevant, Defendant, Michael Moore, was an official of Defendant, Delaware County, and was acting under color of state law.

22. At all times relevant, Defendant, Michael Moore, performed his actions while clothed with the authority of the state.

23. At all times relevant hereto, Sergeant Mohammed Fakolee, was an adult individual, citizen and resident of the Commonwealth of Pennsylvania, and was employed by defendant Geo Group prior to 4/6/22 and by Delaware County after 4/6/22, as a correctional officer at the George Hill Correctional Facility.

24. Defendant, Sgt. Mohammed Fakolee, was a corrections officer on duty in Unit #10A of the George Hill Correctional Facility on 4/21/22, at the time when Elliott Funkhouser was transferred from cell unit #8 and placed into a cell with Boccella in cell unit #10A.

25. Defendant, Sgt. Mohammed Fakolee, was acting under color of state law at the time of placement of Funkhouser and Boccella in the same cell.

26. At all times relevant hereto, corrections officer S. Brownell was formerly unknown to plaintiffs, prior to discovery, and identified as John Doe correctional officer assigned to prison unit 10A at the time of Funkhouser's transfer into Boccella's cell on 4/21/22.

27. At all times relevant hereto, S Brownell, was an adult individual, citizen and resident of the Commonwealth of Pennsylvania, and was employed by defendant Geo

Group prior to 4/6/22 and by Delaware County after 4/6/22, as a correctional officer at the George Hill Correctional Facility.

28.     At all times relevant hereto, Defendant, S. Brownell, was acting under color of state law at the time of placement of Funkhouser and Boccella in the same cell.

29.     At the time of placement of Funkhouser with Boccella, S. Brownell correctional officer, was acting under color of state law.

30.     Defendant Wellpath is a privately owned health care company with a principal headquarters located at 3340 Perimeter Drive, Nashville, TN, 37211.

31.     At all times relevant herein, Wellpath provided healthcare services to the George Hill Correctional Facility.

32.     Wellpath was first engaged by the Geo Group on 3/1/22, to provide, in part, mental health services to the inmates and to advise and assist the prison in inmate intake screening and identifying inmates that may pose a threat to staff and other inmates.

33.     Wellpath continued on in the same role identified in paragraph #32 above for Delaware County after 4/6/22 when the County took over control and management of the prison.

34.     At all times relevant hereto, Kristen Grady, was an adult individual, citizen and resident of the Commonwealth of Pennsylvania, and was employed by both the Geo Group prior to 3/1/22 and by defendant Wellpath thereafter, as a Health Services Administrator working at the George Hill Correctional Facility.

35.     Defendant, Kristen Grady, oversees medical department operations and the services, including those relative to mental health, offered to the jail population and was responsible for administering policies, practices, procedures and training for the nursing

staff to perform mental health unit inmates threat assessments and to properly communicating to prison staff an inmate's threat assessment for prison staff and inmate safety purposes.

36.     Defendant, Kristen Grady, was acting under the color of state law in administering and communicating the inmate threat assessments while employed at the George Hill Correctional Facility.

37.     At all times relevant hereto, Defendant, Serene Eddy, was an adult individual, citizen and resident of the Commonwealth of Pennsylvania, and was employed by by both the Geo Group prior to 3/1/22 and by defendant Wellpath thereafter while working at the George Hill Correctional Facility.

38.     Defendant, Serene Eddy, had significant interaction with the inmates on unit 10A, including discovering Funkhouser strangled to death by Boccella on 4/22/22.

39.     At all times relevant hereto, defendant Serene Eddy was responsible for inmate threat assessments and communicating those threat assessments to the proper prison staff.

40.     Defendant, Serene Eddy, was acting under the color of state law in performing and communicating inmate threat assessments while employed at the George Hill Correctional Facility.

41.     At all times relevant hereto, Defendant Nina ChyChula, formerly identified as "Jane Doe Employed by Wellpath" has been identified in discovery an adult individual, citizen and resident of the Commonwealth of Pennsylvania, employed as a nurse providing psychological and threat assessments of inmates for both defendant Geo Group

prior to 3/1/22 and by Defendant Wellpath thereafter and working at the George Hill Correctional Facility providing health services to inmates.

42. Defendant, Nina Chychula, was responsible for performing mental health unit inmates threat assessments and properly communicating that assessment to the proper prison staff for staff and inmate safety purposes.

43. Defendant, Nina Chychula , was acting under color of state law in providing the aforesaid services.

44. At all times relevant hereto, Defendant Megahn Gilbert, formerly identified as "Jane Doe employed by Wellpath" who's identity was revealed in discovery, is an adult individual, citizen and resident of the Commonwealth of Pennsylvania, and was employed as a nurse providing psychological and threat assessments of inmates for both defendant Geo Group prior to 3/1/22 and by Defendant Wellpath thereafter and working at the George Hill Correctional Facility providing health services to inmates.

45. Defendant, Meghan Gilbert, is responsible for assessing mental health unit inmates and communicating threat assessments to the prison staff for prisoner classification purposes.

46. Defendant, Meghan Gilbert, was acting under the color of state law in performing and communicating the inmate threat assessments while employed at the George Hill Correctional Facility.

## **FACTS**

### **NON-PARTY SHAD MURRAY BOCCELLA HISTORY**

47. Non-Party, Shad Murray Boccella, is currently charged with the murder of Elliott Funkhouser, Sr., Delaware County Docket Number CP-23-CR-3377-2022,

currently listed for a trial in the Delaware County Court of Common Pleas for August 5, 2024.

48.    Prior to the murder/killing of Mr. Funkhouser, Mr. Boccella was already incarcerated in the George Hill Correctional Facility, beginning  on or about 2/9/22, stemming from an arrest relative to Delaware County Common Pleas Docket Number CR-870-2022.

49.    At the time of Boccella's arrest, the Geo Group was operating and controlling the George Hill Prison.

50.    The transfer of control of the prison from the Geo Group to Delaware County occurred on 4/6/22.

51.    Upon information and belief, each of the named defendant nurses were employed at the George Hill Correctional Facility by the Geo Group prior to the transfer of the health services to Wellpath on 3/1/22 and by Wellpath thereafter (a/k/a dual employees).

52.    Upon information and belief, each of the named defendant prison staff, except the Warden Laura Williams, were employed at the George Hill Correctional Facility by the Geo Group prior to the transfer of the prison control on 4/6/22 and by Delaware County thereafter (also a/k/a dual employees).

53.    On 2/9/22, the medical division of the Geo Group did an "Intake Screening" of Boccella identifying him as a "risk of assault on staff or other inmates." (Wellpath bate stamped document production "Confidential WP000832-833")

54.    On the same intake screening for Boccella, the evaluating Geo employee checked the box indicating Boccella to be "Bizarre or abnormal behavior" as well as circling the box for "agitation."

55.    Boccella was placed in mental health block 10A from the inception of his incarceration but routinely refused to take his prescribed medication.

56.    Each inmate on block 10A was subject to a weekly assessment of their mental progress and threat assessment.

57.    As part of the health unit's duties, whether under the Geo Group or Wellpath, although HIPPA rules prevented disclosure of inmate's medical or mental health records to the prison staff, the health unit had the duty to report to prison staff to identify inmates that were believed to be a threat of harm to staff or other inmates (a/k/a a "threat assessment".)

58.    Despite the threat assessment duty of the health division, whether under the Geo group or Wellpath, the health unit had no official policy or practice of recording and communicating an inmate threat assessment to the proper prison staff until 4/21/22, when Wellpath initiated a new threat assessment tier system.

59.    On the morning of 4/21/22, Wellpath's nurse psychologist, Nina Chychula, conducted what has been identified as a pilot inmate threat assessment tier system of all the inmates located on the mental health block,10A, providing a tier designation between 1 and 5.

60.    Boccella was assessed as a tier 4 inmate.

61.    Tier 4 inmates are defined, in part, as a "threat to harm others" and "Inmate exhibits behavior that poses a threat to other inmates or staff."

62.     Despite the required routine mental health and threat assessment of 10A inmates, the prison records reveal that except for the original threat assessment of Boccella on his intake screening of 2/9/22 and next recorded threat assessment of Boccella was performed by Nina Chychula on 4/21/22, the day of Funkhouser's transfer into Boccella's cell.

63.     There exists no written threat assessment of Boccella between the dates of 2/9/22 and 4/21/22, a nearly 2 ½ month gap.

64.     The health unit relied upon word of mouth and the prison staff's correctional officers to form their own opinions from their interaction with the inmates despite their lack of formal mental health threat assessment training possessed by the health unit nurses and employees.

65.     As of the time of Funkhouser's transfer into Boccella's cell on 4/21/22 at 9 P.M., Boccella was known by the health unit and correctional officers regularly assigned to unit 10A to be a significant threat to staff and fellow inmates.

66.     For inmate cell assignment and various record keeping purposes, the prison utilized a computer program identified as the Offender Management System (OMS).

67.     The OMS identifies prisoners who are a threat to staff and other inmates as "house alone/Rec. alone," which means they are not to be exposed to other inmates in either their cell or in recreation time assigned the prisoner.

68.     As of 4/21/22, the date of Funkhouser's transfer into Boccella's cell, the OMS system did not identify Boccella as a threat to staff or other inmates.

69.      As of 4/21/22, the date of Funkhouser's transfer into Boccella's cell, the OMS system did not identify Boccella as house alone or rec, alone.

70.    On 4/21/22, Nurse Nina Chychula did not know where to record, nor where to send/communicate her unit 10A tier system threat assessment, including the tier "4" assessment of Boccella, and forwarded her threat assessments of the 10A inmates by email to defendant nurse Meghan Gilbert, who originally requested Nurse Chychula perform the pilot tier threat assessment of the inmates of 10A.

71.    Upon information and belief, as a "pilot program," there was no system or means of recording and communicating the performed threat assessment to others in the health unit and to the appropriate prison personnel for record keeping.

72.    Upon information and belief, the morning 4/21/22 tier "4" threat assessment of Boccella was never reported to appropriate prison personnel to be entered into OMS system prior to Funkhouser's transfer into Boccella's cell at approximately 9 P.M. the evening of 4/21/22.

73.    During the 2 ½ months that Boccella was an inmate of the George hill Correctional Facility prior to 4/21/22, he exhibited many signs of a dangerous mental health disorder rendering him a danger to staff and fellow inmates.

74.    On 3/8/22, Wellpath's records reveal that Boccella was described as "Very angry mood. Seems unpredictable." (Bate Stamp WP000821)

75.    There is no record reflecting Wellpath's communication of Boccella's anger or unpredictability to prison personnel sufficient to change the OMS house alone designation of Boccella prior to 4/21/22.

76.    Upon information and belief and at all times relevant hereto, both the Geo Group and Delaware County had in place a Policy and Procedure for reporting any event or occurrence considered significant or unusual in nature.

77.     In the event of an incident or event requiring an incident report to be filled out, the "Security" Policy and Procedural Manual; Titled "Incident Report" provided prison staff an incident report form to fill out by the end of the employee's shift, and date, sign and provide the form for review by the unit manager/shift commander with the original form submitted to the Warden through the Deputy Warden of security and major of security daily.

78.     Upon information and belief and following document production in discovery herein, no incident reports regarding Boccella exist prior to 4/22/22 when Funkhouser was found strangled to death by Boccella.

79.     Upon information and belief, on 3/16/22, more than one month prior to the killing of Mr. Funkhouser, inmate Boccella was scheduled to appear for a formal arraignment in the Delaware County Court of Common Pleas by remote video, wherein Mr. Boccella would be transported from his cell to a room in the George Hill Correctional Facility equipped with video and microphone capabilities to be formally arraigned.

80.     On that same date, 3/16/22, the correctional officers, then employed by Defendant, GEO Group, informed the Court and Mr. Boccella's criminal defense attorney, Jason Young Esq. that Mr. Boccella was incapable of being transported for his arraignment due to his dangerous and erratic behavior. The arraignment was conducted in Mr. Boccella's absence.

81.     Upon information and belief, no incident report to reflect Boccella's "dangerous and erratic behavior" was filled out or recorded.

82.    On 3/21/22, following the completion of the arraignment, Mr. Boccella's criminal defense attorney filed an Application for a Competency Examination, with said application being granted on 3/25/22.

83.    Ultimately a competency analysis was ordered by the Court.

84.    The Court appointed a competency evaluator who attempted to evaluate Boccella on 4/19/22 but, despite multiple attempts by guards to bring him to the evaluator in the visitation room inside the prison, the evaluation could not take place due to what the guards advised the evaluator that Boccella was too disruptive to allow him off the unit.

85.    No incident report to reflect that Boccella was too disruptive to be brought to the visitor's room for a court ordered competency exam was filled out or recorded.

86.    The evaluator returned in the morning of 4/21/22 to make another attempt at evaluating the competency of Boccella for Court purposes.

87.    On 4/21/22, Boccella was supposed to be escorted down to the prison visitation room again when guards notified the court appointed competency evaluator, Gail Martin, PsyD., that Mr. Boccella was exhibiting extremely volatile and aggressive behavior and could not be brought down for the evaluation in the visitor section of the prison.

88.    No incident report was either filled out or recorded to reflect that on the morning of 4/21/22, approximately 10 to 12 hours before Funkhouser's transfer into Boccella's cell that Boccella could not be transferred to the visitor's room for a 2nd time due to "exhibiting volatile and aggressive behavior."

89.    The Court appointed psychologist, Gail Martin, felt it was in the best interest of the examinee that she lay eyes on him and ultimately went to the mental health unit,

where he was being housed. On the unit, she was assisted by the unit case manager who accompanied her on the unit floor to see if Boccella would agree to the evaluation.

90. Boccella verbally consented and was brought to the case managers office who remained in the room for the entirety of the evaluation.

91. The entire competency evaluation was conducted in front of inmate Boccella's case manager.

92. The competency evaluation determined, in part, that Mr. Boccella exhibited overt signs schizophrenia, paranoia, delusional behaviors and was hearing voices.

93. Boccella exhibited behavior that even to the untrained eye would cause the case manager to consider him a high-risk inmate

94. The competency evaluator determined that Boccella was not competent to stand trial at that time.

95. Upon information and belief, the 4/21/22 competency exam was completed during the first shift.

96. Despite the Incident report policy requiring reporting by the end of the shift of the involved prison personnel, no incident report from the 4/21/22 morning shift exists from either the correctional officers who could not bring Boccella to visitors room for a competency exam nor the case manager, who attended the entire competency exam, ever authored or recorded an incident report to reflect Boccella's dangerous, volatile and aggressive behavior.

97. Upon information and belief, the correctional guards assigned to the mental health block 10A for both the Geo Group and Delaware County, were all aware that

Boccella was, unpredictable and a danger to staff and other inmates and should not be housed with other inmates.

98. Despite a running knowledge of Boccella's dangerous proclivities from his intake screening and incidents involving Boccella confirming his threat to the safety of staff and inmates, the dual employees of the Geo Group, Delaware County and/or Wellpath failed to document their opinions, assessments and failed to author required incident reports as per the prison's policies and procedures.

99. Despite the aforesaid, incidents, assessments and the common knowledge of the dual employees that Boccella was a "threat to other inmates and staff," the defendant, Delaware County, has verified in its discovery answers that at no time prior to the murder of inmate Funkhouser did the Operations Management System (OMS) ever designate Boccella as "house alone", meaning he was not to be assigned a cellmate.

100. Only after the murder of Funkhouser was Boccella either held in segregation or identified as "house alone."

101. At all times prior to the transfer of control of the prison on 4/6/22, the Defendant, GEO Group, knew or should have known that Boccella was too dangerous to house with another inmate and properly documented and advised Delaware County of his threat to other inmates in order to have prevented the transfer of Funkhouser into Boccella's cell at approximately 9 p.m. on 4/2122, only to be found murdered the next morning on 4/22/22.

102. Despite the knowledge of Boccella's danger and threat to other inmates, the Geo Group failed to designate Boccella as "house alone" prior to the transfer of management and control of the prison on 4/6/22.

103.    Despite the knowledge of Boccella's danger and threat to other inmates, the defendant Delaware County failed to designate Boccella as "house alone" prior to the transfer of Funkhouser into Boccella's cell on 4/21/22 at approximately 9 P.M..

104.    Despite the knowledge of Boccella's danger and threat to other inmates, the defendant Wellpath failed to sufficiently communicate to both the Geo Group and Delaware County the fact that Boccella was a threat to harm staff and inmates despite multiple and routine assessments confirming Boccella's threat to inmates and staff.

105.    The Geo Group and Wellpath employees failed to properly notify Delaware County of Boccella's threats to staff and inmates upon transition of management and control of the prison.

106.    The employees of the Geo Group who remained working at the prison for either Wellpath or Delaware County failed to properly document and communicate Boccella's threat to inmates and staff despite it being common knowledge of those who interacted with Boccella from his intake until the murder of Funkhouser.   .

107.    It is further believed and therefore averred that the abrupt and disorganized transition of control of the prison from the Geo Group back to Delaware County resulted in the Defendants not properly relaying the full extent of the degree to Boccella's mental infirmities and corresponding dangers.

108.    The defendants, Geo Group, Delaware County and Wellpath all were aware that  Boccella was not to be housed with any other inmates.

109.    The defendants, Geo Group, Delaware County and Wellpath and all failed to warn, record or document Boccella's threat and dangerous proclivities toward cell mates.

110. The defendants, Geo Group, Delaware County and Wellpath and all failed to properly train its staff to identify, record and communicate to the proper personnel an inmate's threat to other inmates.

111. The defendants, Geo Group, Delaware County and Wellpath and all failed to properly enforce required and necessary incident reporting of inmate behavior sufficient to identify an inmate as a threat to other inmates and staff.

112. The defendants, Geo Group, Delaware County and Wellpath and all failed to develop an intra prison communication system to coordinate inmate threat information between the health unit, correctional officers and those responsible for inmate cell assignments, especially as to transfers into the mental health unit.

113. The defendants, Geo Group, Delaware County and Wellpath failed to have in place a system, like the tier system pilot program of 4/21/22, prior to that date to properly assess an inmate's threat to other inmates and staff.

114. The defendants, Geo Group, Delaware County and Wellpath improperly relied upon word of mouth and the staff's personal impressions in order assess an inmate's threat to others without a proper, immediate and efficient system in order to prevent a situation like Funkhouser being transferred into the mental health ward, presumably to receive better and more extensive treatment, but, instead, being placed into a cell with a killer.

## ELLIOTT NAYTHAN FUNKHOUSER, SR. INCARCERATION

115. On April 3, 2022, Elliott Funkhouser, was arrested due to a parole violation on Delaware Criminal Docket Number 6491-2013. The underlying arrest has a docket

number of MJ-32127-CR-85-2022, said docket has now been classified as "limited access."

116.    Pending the disposition of the underlying charges and parole violation, Funkhouser was placed in incarceration at the George Hill Correctional Facility, located at 500 Cheyney Road, Thornton, PA 19373.

117.    On April 21, 2022, defendant Michael Moore, was in charge of inmate cell assignment and had the duty to classify prisoners for assignment to a cell mate or to be for the inmate to be designated "house alone/rec. alone" and be housed alone in a cell.

118.    On April 21, 2022, Defendant Moore believed Cell block unit 8 had too many inmates in need of better mental health care and should be transferred to 10A for that purpose.

119.    As of the morning of 4/21/22, Funkhouser was one of those inmates on cell block unit 8 that Moore desired to move to 10A.

120.    As of the morning of 4/21/22, Funkhouser was designated a "house alone" inmate.

121.    Moore engaged Wellpath nurse, Meghan Gilbert, to determine if Funkhouser could be moved to 10A and downgraded from a "house alone" designation to being able to have a cell mate.

122.    Meghan Gilbert assessed Funkhouser's ability for transfer and to be placed with a cellmate. Gilbert emailed Moore referring to Funkhouser as "*very pleasant and talkative…could be housed with another inmate provided the other inmate would not try to manipulate or intimidate him.*"

123.   Moore then contacted the morning shift correctional officer on duty in Cell block #10A, Norman Passarella, seeking to transfer Elliott Funkhouser to cell block 10A from cell block 8.

124.   Passarella advised Moore that there was no safe cell space on block #10A and not to transfer any inmate over to 10A.

125.   Passarella worked 1st shift on 10A on 4/21/22 and, at the end of his shift at 4 P.M., he worked a 2nd shift as what is known as a roamer, a correctional officer who roams an entire block rather than have a set of cells assigned them.

126.   Passarella was the correctional officer assigned to accompany Wellpath nurse, Nina Chychula, during her "pilot' tier threat assessment.

127.   Passarella made know to nurse Chychula of his concerns that although he told Moore not to transfer Funkhouser to 10A due to the unavailability of a safe cell option, Moore was still intending to do so.

128.   It is the duty and responsibility of Moore, the head of the cell assignment division of the prison, to make certain of the safe transfer of inmates.

129.   It is the duty and responsibility of Moore to evaluate and assess both the transferred party and the inmate receiving the transfer to make certain of a safe transfer.

130.   It is the duty and responsibility of Moore to specifically identify what cell to place a transferred inmate, including Funkhouser, rather than leave that decision to the correctional officers on duty in order to make certain of a safe inmate transfer.

131.   The aforesaid duties of Moore as cell assignment head, are particularly important and acute when transferring an inmate into the 10A mental health ward, where more house alone inmates are housed than any other cell block in the prison.

132.   Despite the aforesaid, Moore authored an incident report on 4/26/22 indicating he did not specifically identify the cell in which Funkhouser was to be transferred on 4/21/22 and left that to the correctional officers on duty at the time.

133.   Despite nurse Meghan Gilbert's assessment of Funkhouser indicating he should not be placed with another inmate that is either manipulative or aggressive, Funkhouser was transferred and assigned to block #10A and placed in cell 105 with Boccella, who, prior to the transfer, was known to be violent, aggressive, unpredictable, volatile, delusional, schizophrenia, paranoid, incompetent to stand trial and dangerous.

134.   On the 2nd shift of 10A from 4 P.M. to to 12P.M. defendant, S. Brownell, along with defendant Seargent Fakolee, were the only correctional officer assigned to block unit 10A.

135.   Defendant S. Brownell was known as a certified emergency corrections officer who was not regularly assigned to 10A but was a fill in for the regularly assigned corrections officer of 10A.

136.   Brownell was not as familiar with the inmates on 10A as would the regularly assigned corrections officers.

137.   Despite being told not to transfer any inmates to unit 10A by 1st shift corrections officer, Passarella, not knowing of Sgt. Fakloee's availability at the time of Funkhouser's transfer and knowing Brownell was a fill-in officer less familiar with the 10A inmates, Moore alleges to have transferred Funkhouser to the mental health ward without a specific cell assignment.

## ELLIOTT NAYTHAN FUNKHOUSER, SR. DEATH

138.    On the evening of April 21, 2022, Elliott Funkhouser was moved from cell block 8 to cell block 10A at the direction of defendant Michael Moore.

139.    On the morning of April 22, 2022, correctional officers, Edward Collins and Fred Pascale, found Elliott Funkhouser, Sr., lying face down on the bottom bunk of his cell wrapped very tightly in sheets and blankets.

140.    Mr. Funkhouser was unresponsive and cold to the touch, later to be deemed dead, with a cause of death listed as ligature strangulation.

141.    The correctional officers noted that they believed a sheet found on Mr. Funkhouser's chest was formed to make a "noose", with Mr. Funkhouser having a red mark around his neck and blood on his mouth.

142.    Boccella admitted to strangling Mr. Funkhouser, and that after strangling Funkhouser to death, Boccella took Funkhouser's shoes and was wearing them when discovered.

143.    At the time of placing Funkhouser and Boccella in the same cell, Defendants knew or should have known that Funkhouser was at an increased risk of physical violence perpetrated upon him by Boccella.

144.    At the time of placing Elliott Funkhouser and Boccella in the same cell, Defendants knew or should have known that Boccella was suffering from mental illness and/or disorders and/or had a predilection for violent tendencies toward others including cellmates.

145.    Despite the duty to do so, the defendants took no precautionary actions to ensure that Elliott Funkhouser would not be harmed by his fellow inmate, Boccella.

146.    Despite George Hill's own policies and practices, the facility failed to take any precautionary action to ensure that Boccella did not harm any other inmates, including Elliott Funkhouser.

147.    The defendants had insufficient administrative structure, organization, policies and procedures to ensure that an inmate such as Boccella would not harm another inmate, including but not limited to, proper employee training, cell monitoring, intake screening dissemination, daily record keeping policies and practices, inter-prison communication between the health departments, correctional officers and classification officers and incident reporting sufficient to alert all parties involved of Boccella's threat to other inmates and prevent the transfer and death of Funkhouser at the hands of Boccella..

148.    The lack of these appropriate training, communications, documentation, procedures and policies and/or alternatively, if the policies and procedures existed, the lack of implementation and enforcement because of custom and habit of not following and enforcing these policies and procedures was a contributing factor to the death of Elliott Funkhouser.

149.    Had the prison classification officer heeded guard Norman Passarella's communication that there was no room in block 10A for Funkhouser to be transferred and had the classification officer, Moore, not disregarded Passarella's communication Funkhouser would still be alive today.

150.    Defendants Moore, S Brownell and Fakolee, assigned to block #10A at the time of the Funkhouser transfer to block #10A, recklessly disregarded the inherent danger and  accompanying risk of harm to Funkhouser by Boccella, despite their personal knowledge of the  risk of harm Boccella posed to Funkhouser..

151. Defendants' failure to perform any threat assessment between the intake screening of 2/9/22 and the pilot tier system of 4/21/22 was woefully inadequate to the degree that this failure was recklessly indifferent to the safety of Funkhouser and grossly negligent.

152. Defendants, each of them, acted with reckless indifference to the threat posed by Boccella as it related to Elliott Funkhouser.

153. Elliott Funkhouser did not die immediately but suffered emotional and physical pain before dying.

154. Defendants deprived Elliott Funkhouser of his basic rights of life, liberty and and to be free from cruel and unusual punishment.

155. Defendants denied Elliott Funkhouser the care and dignity required to be afforded to all humans, despite being incarcerated.

156. Had defendants properly performed and communicated Boccella's known threat to staff and other inmates, then the loss of Elliott Funkhouser's life could have been avoided.

157. The defendants' failure to protect Elliott Funkhouser from the violent tendencies of Boccella, that were known or should have been known, is not only reckless and grossly negligent, but indicative of extreme cold-heartedness and indifference to obvious needs of inmates entrusted to their charge.

158. The overall structure and organization and lack of implementation of any policy by Defendants to assess and document the risk of inmates, such as Boccella, to harm to other inmates in their exclusive custody and control was grossly reckless and

deliberately indifferent to the health needs, and safety and well-being needs of Elliott Funkhouser.

159.    Ensuring inmate protection from other inmates is the responsibility of the administrative and custodial staff including specifically the above-named Defendants.

160.    Defendants failed to train their staff in any regard whatsoever concerning the risk posed by mentally unstable and/or violent inmates, such as Boccella.

161.    The actions, inactions, policies, procedures, customs existing in the prison during Boccella's incarceration until his murder of Funkhouser were a factual cause of the death of Elliott Funkhouser.

162.    Defendants failed to communicate, document and confer with each other regarding observations and interactions with Boccella sufficient to alert others of a heightened need for isolation and monitoring of Boccella so that he did not pose a threat to other inmates.

163.    Defendants failed to prioritize the most important primary aspect of Funkhouser's detention, his safety.

164.    Defendants failed to assign turnkey personnel to monitor video feed of the cell housing inmates Elliott Funkhouser and Boccella.

165.    Defendants failed to keep a log of visual and personal checks and observations of the cell housing inmates Funkhouser and Boccella after knowingly assigning any cellmate to Boccella.

166.    Defendants, Geo Group, Wellpath and Delaware County supported, facilitated and caused a violation of Elliott Funkhouser's constitutional rights through their acts, inaction, executed and nonexistent policy, regulation and officially adopted decisions

or informally adopted customs which inflicted transgressions upon the constitutional rights of Elliott Funkhouser.

167. Defendants Geo Group, Wellpath and Delaware County, fostered an atmosphere and custom of failure to follow protocols required for detainees and/or inmates.

168. The correctional facility officers and other agents, employees, and/or workmen, including head of the cell classification division of the prison, Michael Moore , employed both by the Geo Group and Delaware County during the time of Boccella's incarceration, should have been trained to review intake screenings and inquire of correctional guards and health care workers in the prison prior to transferring any inmate into the mental health ward.

169. The correctional facility officers and other agents, employees, and/or workmen, including head of the cell classification division of the prison, Michael Moore , employed both by the Geo Group and Delaware County during the time of Boccella's incarceration, was trained to review intake screenings and inquire of correctional guards and health care workers in the prison prior to transferring any inmate into the mental health ward, but failed to do so prior to transferring Funkhouser into a cell with Boccella..

170. Contrary to policy, practice and duty, Michael Moore failed to designate a specific cell assignment for Funkhouser on the mental health ward, leaving it to the correctional officers to determine what cell to place Funkhouser.

171. Upon information and belief and contrary to his sworn statement regarding this incident, Moore specifically assigned Funkhouser to Boccella's cell.

172.    Upon Information and belief and contrary to safe inmate transfer policy and practice, Moore failed to review Boccella's intake screening, or confer with regularly assigned correctional officers and mental health nurses, doctors and counselors before the transfer of Funkhouser into Boccella's cell

173.    Upon Information and belief and contrary to safe inmate transfer policy and practice, Moore ignored the warning of corrections officer Passarella, who had been regularly assigned to the mental health block 10A for approximately 2 years prior to the 4/21/22 transfer of Funkhouser, that there was no room for Funkhouser other than house alone inmates.

174.    Moore improperly relied solely on Boccella's incomplete and inaccurate OMS cell designation in transferring Funkhouser into Boccella's cell.

175.    At all times material hereto, the defendants had a duty to act to prevent inmates from harming other inmates within their custody, by and through measures including appropriate placement of inmates, sensitivity, communication, surveillance, supervision, referrals and mental health care and assessment.

176.    Elliott Funkhouser's death was preventable, had Defendants exercised any caution or care for Funkhouser, while he was under their care, custody and control, including not placing Mr. Funkhouser in a cell with Boccella.

177.    The injuries and damages suffered by Elliott Funkhouser and Plaintiffs were directly and proximately caused by the acts and/or omissions of Defendants, jointly and severally, individually, or by and through their agents, servants and/or employees.

178.    The acts and/or omissions of all Defendants, jointly and severally, directly factually and proximately caused and/or increased the risk of harm and death suffered by Elliott Funkhouser.

179.    As a direct and proximate result of the negligence of all Defendants, jointly and severally, as well as the negligence of their agents, servants, and/or employees, Elliott Funkhouser was caused to experience damages which included the following:

a.    Pain and suffering.
b.    Emotional trauma.
c.    Fear and fright.
d.    Humiliation and embarrassment.
e.    Economic loss.
f.    Wage loss and loss of future earning capacity.
g.    Medical bills and funeral expenses.
h.    Loss of Life/Death.

**COUNT I**
**CIVIL RIGHTS – 42 U.S.C. §1983**
**STATE CREATED DANGER AND DELIBERATE INDIFFERENCE CLAIMS**
**Plaintiffs v. Defendants, Laura Williams, Michael Moore, Sgt. Mohammed Fakolee, S. Brownell, Kristen Grady, Serene Eddy, Nina Chychula and Meghan Gilbert**

180.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

181.    The grossly negligent and reckless conduct of Defendants, each of them, as set forth above, acting under color of state law, harmed Plaintiff as set forth in this complaint.

182.    The Count 1 defendants were recklessly indifferent to the safety, health, medical, bodily integrity, and well-being needs of Elliott Funkhouser.

183. The Count 1 defendants consciously disregard the substantial and/or unjustifiable risk of harm to Elliott Funkhouser and was so egregious as to shock the conscience.

184. The conduct of the Count 1 defendants as set forth above, violated Elliott Funkhouser's constitutional rights while in pre-trial custody, particularly rights to be free from cruel and unusual punishment, rights to be free from state created danger, and to substantive and procedural due process, as guaranteed to pre-trial detainees by the Fourteenth Amendment of the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

185. The conduct of Defendants acting under cover of law, created a dangerous situation by willfully disregarding the safety of Elliott Funkhouser thereby causing foreseeable and direct harm to his life, liberty and pursuit of happiness.

186. The conduct of the count 1 defendants acting under cover of law was reckless and grossly negligent as aforesaid.

187. The Count 1 defendants' affirmative actions, as described above, were an exercise and misuse of Defendants' authority in a way that created danger to Elliott Funkhouser and rendered him more vulnerable to danger, which danger in fact occurred resulting in his death.

188. The conduct of Defendants as set forth above violated Elliott Funkhouser's constitutional rights while he was in custody as specified:

    a.    His right to be free from deliberate indifference to the substantial risk of harm.

    b.    His rights pursuant to the due process clause of the Fourteenth Amendment to the United States Constitution.

    c.    His right to be free from deliberate indifference to his serious safety needs, health needs, bodily integrity and well-being needs.

d. His rights to substantive and procedural due process as guaranteed by the Fourteenth Amendment of the United States Constitution.

e. His right to be free from state created danger pursuant to the due process clause of the Fourteenth Amendment of the United States Constitution; and

f. His right to be free from danger and harm caused by another inmate, of which the Defendants were aware had violent tendencies toward cellmates and placing Funkhouser in a locked cell with Boccella without supervision.

189. As a direct and proximate result of the acts and omissions of all individual Count 1 defendants, in their official capacities, are liable for the harm sustained by Elliott Funkhouser.

190. Defendants, each of them, whose actions, conduct and failure to act, placed Elliott Funkhouser in grave harm, are liable in their individual capacities for the injuries sustained.

191. Plaintiffs, as Administrators of the Estate of Elliott Funkhouser, request damages on behalf of Elliott Funkhouser's heirs in accordance with 42 USC §1983.

192. As a direct and proximate result of the violations of Elliott Funkhouser's civil rights, he was caused to suffer grievous physical injuries and death as set forth above and herein.

WHEREFORE, Plaintiffs demand judgment in their favor and against all listed Defendants of Count 1, individually and/or jointly and severely, in excess of $150,000.00, exclusive of interest and costs, which sum includes but is not limited to:

a. A compensatory damage award.

b. Reasonable attorney's fees and costs.

c. Reasonable past medical and funeral expenses.

d. Past and future lost wages.

e. Damages for pain and suffering.

f. Compensation for the loss of his life.

g. Punitive damages against the individual Defendants.

h. All other damages recoverable under 42 U.S.C. §1983.

i. Such other and reasonable and just relief as is available under the law.

**COUNT II**
**CIVIL RIGHTS – 42 U.S.C. §1983**
**MONELL CLAIM**
**Plaintiffs v. Defendants, Delaware County, the Jail Oversight Board of**
**Delaware County, GEO Group, Inc., Wellpath LLC**

193.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

194.    Defendant, GEO Group, was responsible for the safe detention and cell classification status of pre-trial detainees at the George Hill Correctional Facility prior to April 6th, 2022.

195.    Prior to March 1st, 2022, GEO Group also provided inmate threat assessments as a function of its medical care division..

196.    Both Boccella and Funkhouser were incarcerated while Defendant GEO Group was still responsible for the management of the facility, including cell assignment classification requirements, prison staff inmate incident reporting and other duties listed above, in order to prevent dangerous inmates, such as Boccella from harming staff and other inmates

197.    Defendant, Geo Group, was aware of inmate, Boccella's mental illness and dangerous proclivities.

198.    Defendant, Geo Group, was responsible for  Boccella's intake screening identifying him as a risk of assault to staff and other inmates and communicating that information to other prison staff for inmate cell classification purposes.

199.    Defendant, Geo Group failed to either properly assess and/or communicate the assessment of inmate Boccella as a dangerous threat to the safety of other inmates.

200.    Defendant, Geo Group failed to provide and/or properly document and communicate to defendants Wellpath and  Delaware County a  threat assessment of inmate  Boccella as part of the transition of control of the health department and prison.

201.    Defendants, Delaware County, the Jail Oversight Board of Delaware County, and Wellpath LLC were responsible for the safe detention of pre-trial detainees at the George Hill Correctional Facility after April 6th, 2022, including the time Elliott Funkhouser was murdered by his cellmate Boccella.

202.    Defendants, Geo Group, Wellpath, Delaware County and the Jail Oversight Board of Delaware County failed to provide policies, procedures, protocols and/or other employee training to ensure the safety of pre-trial detainees in the county jail, and in particular, policies, procedures, protocols and/or other employee training concerning how detainees should be assessed, documented and communicated regarding potential for harm to other inmates for cell classification purposes and cell assignments.

203.    Defendants, Geo Group, Wellpath, Delaware County and the Jail Oversight Board of Delaware County failed to provide policies, procedures, protocols and/or other employee training to ensure the safety of pre-trial detainees in the county jail, and in particular, policies, procedures, protocols and/or other employee training concerning classification and cell assignment of detainees who are deemed a risk to harm other inmates and should be housed separately to prevent harm to other inmates.

204.    Said policies, procedures, protocols and/or other employee training are necessary for assessing and preventing the risk of serious injury including death to detainees such as Elliott Funkhouser while in the exclusive custody and control of Defendants.

205.    Defendants, failed to provide policies, procedures, protocols and/or other employee training to assess the safety needs of detainees such as Elliott Funkhouser, when under the sole custody and control of Defendants and monitoring procedures when detaining a pre-trial arrestee in the George Hill Correctional jail cell.

206.    Defendants failed, despite being aware of the risk that fellow inmate, Boccella posed to other inmates, to make any changes to policies practices, and procedures or the housing of inmates that would have prevented the inmate-on-inmate violence that resulted in the death of Elliott Funkhouser.

207.    Defendants, failure to enact the previously described policies, procedures, protocols and/or other employee training constituted denial of Elliott Funkhouser's constitutionally protected civil rights and demonstrate deliberate indifference to Elliott Funkhouser's safety needs and well-being needs, while in the exclusive control of Defendants and such actions resulted in the death of Elliott Funkhouser.

208.    Defendants, as set forth above, acting under color of state law, was negligent, reckless and deliberately indifferent to the safety needs, health needs, well-being needs, medical needs and bodily integrity needs of Elliott Funkhouser and was committed in conscious disregard of the substantial risk and/or unjustifiable risk of causing harm including death to Elliott Funkhouser, and was conduct which arises to willful misconduct and/or gross negligence, and was so egregious as to shock the conscience.

209.    The conduct of Defendants, Delaware County, the Jail Oversight Board of Delaware County, GEO Group and Wellpath, as set forth above, violated Elliott Funkhouser's constitutional rights while in exclusive custody.

210. As a direct and proximate result of the acts and omissions of Defendants, Delaware County, the Jail Oversight Board of Delaware County, GEO Group and WellPath, said Defendants are liable for the harm and death caused to Elliott Funkhouser.

211. As it applies to Defendants, Delaware County, the Jail Oversight Board of Delaware County, GEO Group and Wellpath:

a. They had actual or constructive knowledge that they and/or their subordinates were engaged in conduct which posed a pervasive and unreasonable risk of constitutional injury to Elliott Funkhouser under the circumstances previously described herein.

b. Their response to that knowledge was so inadequate as to demonstrate deliberate indifference to or tacit authorization of the alleged dangerous and offensive practices pertaining to the detention of pre-trial detainees under the circumstances previously described herein; and

c. The policy and custom of not abiding by or enforcing policies, if any, concerning the handling, monitoring, safety, assessment and well-being of detainees demonstrated deliberate indifference to and/or tacit authorization of the dangerous and offensive practices pertaining to the detention of pre-trial detainees including Elliott Funkhouser.

d. The policy and custom of accepting the admission of additional detainees when the inmate population exceeds the prison's capacity to properly house the inmates, requiring the prison staff to ignore and violate their own inmate classification status in place as "house alone," such as Boccella, with a cell mate, exposing the transferred inmate to great harm and death.

212. These actions and/or inactions had a direct causal link to the constitutional injury, harm and death suffered by Elliott Funkhouser.

213. Defendants, Delaware County, the Jail Oversight Board of Delaware County, GEO Group and Wellpath, developed and maintained a number of deficient policies and/or customs which caused the deprivation of Elliott Funkhouser's constitutional rights aforesaid. Said policies or customs were a direct and proximate

cause of the constitutional harm, injuries and death suffered by Elliott Funkhouser as aforesaid.

214. As a direct and proximate result of the violation of Elliott Funkhouser's civil and constitutional rights, he was caused to suffer grievous physical injuries including death as set forth above and herein.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, Delaware County, the Jail Oversight Board of Delaware County, Wellpath LLC, and GEO Group, Inc., in excess of $150,000.00, exclusive of interest and costs, which sum includes, but is not limited to:

a. A compensatory damage award.
b. Reasonable attorney's fees and costs.
c. Reasonable past medical and funeral expenses.
d. Past and future lost wages.
e. Damages for pain and suffering.
f. Compensation for the loss of life.
g. Punitive damages against the individual Defendants.
h. All other damages recoverable under 42 U.S.C. §1983.
i. Such other and reasonable and just relief as is available under the law.

**COUNT III**
**<u>NEGLIGENCE</u>**
**Estate of Elliott Naythan Funkhouser, Sr. v. GEO Group, Inc.**
**<u>and Wellpath, LLC</u>**

215. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

216. At all times relevant hereto, Defendants, GEO Group and Wellpath are not governmental agencies.

217. The Geo Group and Wellpath were negligent in their duty to keep Funkhouser safe from harm and death at the hands of inmate Boccella as aforesaid.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, GEO Group, Inc. and Wellpath, LLC, in excess of $150,000.00, exclusive of interest and costs, which sum includes, but is not limited to:

j.    A compensatory damage award.
k.    Reasonable past medical and funeral expenses.
l.    Past and future lost wages.
m.    Damages for pain and suffering.
n.    Punitive damages against the individual Defendants.
o.    Such other and reasonable and just relief as is available under the law.

## COUNT IV
## PENNSYLVANIA WRONGFUL DEATH AND SURVIVOR ACT
### Estate of Elliott Naythan Funkhouser Sr.  v. All Defendants

218.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein at length.

219.    As a direct result of the Defendants' actions, Elliott Funkhouser suffered the injuries, damages, and untimely death described herein.

220.    The Estate of Elliott Naythan Funkhouser Sr. seeks damages under 42 Pa.C.S. §8301 et seq. for wrongful death and 42 Pa.C.S. §8301 et seq. for survivor damages, including but not limited to, the loss of her services, protections, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, as well as for their severe emotional distress and mental health anguish caused by this loss, as well as for funeral expenses and damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against all Defendants, individually and/or jointly and severely, in excess of $150,000.00, exclusive of interest and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment in their favor and against all

Defendants, individually and/or jointly and severely, in excess of $150,000.00, exclusive

of interest and costs, which sum includes but is not limited to:

a.  A compensatory damage award.
b.  Reasonable past medical and funeral expenses.
c.  Past and future lost wages.
d.  Damages for pain and suffering.
e.  Punitive damages against the individual Defendants.
f.  Damages pursuant to Pennsylvania Wrongful Death Act, 42 Pa.C.S. §8301.
g.  Damages pursuant to the PA. Survival Act, 42 Pa.C.S. §8302; and

h.  Such other and reasonable and just relief as is available under the law.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all claims and issues so triable.


Respectfully submitted,


Date:  9/23/2024                          BY:    */s/ Michael LaRosa*
                                                MICHAEL LaROSA, ESQUIRE
                                                Attorney ID Number: 50011
                                                LaRosa Law Firm
                                                959 West Chester Pike
                                                Havertown, PA 19083
                                                Phone: 610-924-0999
                                                Fax: 610-924-0473
                                                Email: ml@larosalawfirm.com
                                                Counsel for Plaintiffs