**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<table>
<tr>
<td>

**ESTATE OF ELLIOTT NAYTHAN
FUNKHOUSER, SR., by and through
DIANE MARIE FUNKHOUSER,
Administrator of the Estate of Elliott
Naythan Funkhouser, Sr.**,

*Plaintiff,*

v.

**DELAWARE COUNTY, et al.**,

*Defendants*.

</td>
<td>

**Case No. 2:24-cv-01091-JDW**

</td>
</tr>
</table>

## MEMORANDUM

Privileges serve an important function, but they also stand in the way of a truth-finding exercise. Thus, it's important that courts confronted with privilege questions analyze the elements of a privilege carefully and hold the party invoking a privilege to its burden to prove each of the elements of the privilege. Congress enacted the Patient Safety and Quality Improvement Act of 2005 ("PSQIA") to encourage medical providers to share information to help improve patient safety and health care outcomes.[1] As part of its effort, Congress created privilege and confidentiality protections so that providers could share information about errors and mistakes without fear that the information would be used against them in lawsuits or other punitive proceedings. But not every

---

[1]    *See* Patient Safety and Quality Improvement, 73 FR 70732-01 (Nov. 21, 2008).

document about medical incidents or mistakes is privileged. In this instance, the medical provider's employees have failed to demonstrate that the information at issue could result in improved patient safety, so the PSQIA does not apply, and they must produce it.

## I.    RELEVANT BACKGROUND

This case stems from the death of Elliott Naythan Funkhouser, Sr. on April 21, 2022, at the hands of a fellow inmate, Shad Murray Boccella, while Mr. Funkhouser was detained in the George W. Hill Correctional Facility in Delaware County, Pennsylvania. Following Mr. Funkhouser's murder, the jail's in-house medical provider, Wellpath LLC, prepared a Mortality & Morbidity Report And Review (the "Report"). Wellpath prepared this report "<u>exclusively</u> for submission to" the Center for Patient Safety—a Patient Safety Organization ("PSO")—"for purposes of improving patient safety, health care quality, and health care outcomes." (ECF No. 140-3 at ¶ 15 (original emphasis).) Wellpath submitted the Report to the PSO on May 27, 2022, and has treated the Report as confidential and privileged "at all times." (*Id.* at ¶ 16.)

On March 13, 2024, Mr. Funkhouser's Estate filed suit against the jail's operators and their employees for violations of his Constitutional rights, pursuant to 42 U.S.C. § 1983. The Estate also asserted claims against Wellpath and its employees, including Kristen Grady, Meghan Gilbert, Nina Chychula, and Serene Eaddy (the "Wellpath Employees").

On November 18, 2024, I severed the Estate's claims against Wellpath from this case because Wellpath had filed a Suggestion Of Bankruptcy. Wellpath has not been a

2

party to this matter since then.[2] Months later, the bankruptcy court discharged the claims against Wellpath, and I lifted the stay in this case. Since lifting the stay, the Parties resumed their discovery efforts.

During discovery, the Wellpath Employees produced Wellpath documents in response to the Estate's discovery requests directed to them (as opposed to Wellpath), including requests that post-date Wellpath's removal from this case. They also included the first two sections of the Report on a privilege log and have refused to produce the Report to the Estate. The Estate has moved to compel, and I had a call with the Parties on February 3, 2026, with respect to the motion. The Wellpath Employees then provided me a copy of the Report to review *in camera*, in connection with this Motion, which is ripe for disposition.

## II.   ANALYSIS

### A.   Possession, Custody, Or Control

As set forth during my call with the Parties, the Wellpath Employees' conduct in this case—particularly since Wellpath was no longer a defendant—demonstrates that I can compel them to produce the Report, even if it belongs to Wellpath. "[L]egal ownership of a document is not determinative" of whether a court can compel a party to produce it. *In re Sunrise Sec. Litig.*, 109 B.R. 658, 661 (E.D. Pa. 1990). Instead, litigants must produce responsive

---

[2]   Nevertheless, on October 13, 2025, the Parties stipulated to amend the Estate's Second Amended Complaint to remove Wellpath as a named Defendant.

documents that are within their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(A). "'Control' under Rule 34 is construed broadly." *Fed. Trade Comm'n v. Am. Future Sys., Inc.*, No. 20-cv-02266, 2023 WL 3559899, at *2 (E.D. Pa. Mar. 28, 2023), *report and recommendation adopted as modified*, 2023 WL 3559319 (E.D. Pa. May 17, 2023). Thus, a party may have requisite control, for purposes of Rule 34, if the party has the legal right, authority, or practical ability to obtain the document. *See Mercy Cath. Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004); *Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023). Given the Wellpath Employees' practical ability to obtain documents from Wellpath—including the Report at issue[3]—I have little trouble concluding that they have the requisite control of the Report, such that the Federal Rules of Civil Procedure empower me to compel them to produce it.

### B.    Privilege

The next question is whether the Report is privileged from production pursuant to the PSQIA. In cases like this one, where there are both federal and state law claims, federal privilege law governs. *See Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000). As the parties asserting that the Report is privileged, the Wellpath Employees bear "the burden of

---

[3]    Indeed, on February 12, 2026, the Wellpath Employees provided me a copy of the Report to review *in camera*, and explained in their cover letter that they requested Section 3 of the Report from Wellpath and would produce it to me as soon as they had it. They produced Section 3 for my review on February 17, 2026. They were also able to obtain an affidavit from a Wellpath executive to support their opposition to the Motion To Compel.

proving [the privilege's] existence and applicability." *In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990).

The PSQIA creates a privilege against disclosure for "patient safety work product" ("PSWP"). 42 U.S.C. § 299b-22(a)(2). The statute defines PSWP as, among other things, written or oral statements that a provider assembles or develops "for reporting to a patient safety organization" and that the provider reports to that PSO and "which could result in improved patient safety, health care quality, or health care outcomes." 42 U.S.C. § 299b-21(7)(A). Courts and commentators refer to this as the "reporting pathway."

There is scant case law regarding the PSQIA privilege, and the Third Circuit has never identified the elements that providers[4] must satisfy to establish that a document constitutes PSWP under the reporting pathway. In the absence of any controlling authority, then, my analysis begins as it must—with the statutory text. *See Sebelius v. Cloer*, 569 U.S. 369, 376 (2013). The PSQIA's plain language includes three requirements for information to constitute PSWP under the reporting pathway: (1) the information was "assembled or developed by a provider for reporting to a [PSO]"; (2) the information was "reported to a [PSO]"; and (3) the information "could result in improved patient safety, health care quality, or health care outcomes[.]" 42 U.S.C. § 299b-21(7)(A)(i)(I).[5]

---

[4]    Under PSQIA, a "provider" is "an individual or entity licensed or otherwise authorized under State law to provide health care services[.]" 42 U.S.C. § 299b-21(8).

[5]    For some reason, many of the cases analyzing the reporting pathway ignore the third element. And the Wellpath Employees have done the same. However, the plain text of the statute and its structure make clear that whether material constitutes PSWP under

The affidavit from Wellpath's Vice President of Quality Improvement, Elizabeth Samson, establishes that Wellpath: (1) created the Report for the sole purpose of reporting to its PSO and (2) submitted the Report to the PSO. However, the Wellpath Employees must do more to invoke privilege pursuant to PSQIA. They have not met their burden to demonstrate that the Report is privileged PSWP because they have not shown that the Report "could result in improved patient safety, health care quality, or health care outcomes[.]" 42 U.S.C. § 299b-21(7)(A)(i). At best, Ms. Samson's affidavit explains that Wellpath created the Report "for purposes of improving patient safety, health care quality, and health care outcomes[,]" (ECF No. 140-3 at ¶ 15), but we already know that because Wellpath created the Report in order to submit it to the PSO. While that satisfies the first element of the privilege, it does not satisfy the third. Just because Wellpath drafted the Report to improve patient safety does not mean that it was capable of doing so.

On the contrary, based on my review of the Report *in camera*, I see nothing in it that could improve patient safety, and the Wellpath Employees have not presented any evidence

---

Section 299b-21(7)(A)(i)(I) **or** (II) depends on whether the information could result in improved patient safety, health care quality, or health care outcomes. Other courts have also concluded that the plain language of PSQIA requires this third element for material to be privileged under the reporting pathway. *See Daley v. Teruel*, 107 N.E.3d 1028, 1037 (Ill. App. Ct. 2018); *Franco v. Yale New Haven Hosp., Inc.*, No. 20-cv-6103795, 2023 WL 2769929, at *7 (Conn. Super. Ct. Mar. 31, 2023); *see also Hyams v. CVS Health Corp.*, No. 18-cv-6271, 2019 WL 6727536, at *1 (N.D. Cal. Dec. 11, 2019). And my reading of the statute comports with the Third Circuit's instruction that "statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for the truth." *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 184 (3d Cir. 2013) (quotation omitted).

or argument as to how it could. This contrasts with the PSWP in *Franco*, where the court determined that the information at issue "had the ability to improve patient safety and the quality of health care." *Franco*, 2023 WL 2769929 at *8. There, the PSWP "led to the creation of a subcommittee to work on an alert process designed to manage incoming aggressive behavior patients in order to better manage the care and safety of these patients." *Id.* at *7. As far as I can tell, Wellpath has not made any changes (or contemplated making any changes) in response to the Report at issue. In fact, the Report indicates that Wellpath did not think that any of its procedures need to be amended or supplemented as a result, and Wellpath did not identify any interventions to reduce risks, improve patient care, or improve future outcomes. Thus, the Wellpath Employees have not established that the Report is PWSP or otherwise privileged from disclosure under PSQIA.

## III.    CONCLUSION

Not every document that Wellpath reports to its Patient Safety Organization for the purpose of improving patient safety qualifies as privileged patient safety work product under PSQIA. That is true here, where the Wellpath Employees have failed to demonstrate that the information at issue could result in improved patient safety, health care quality, or health care outcomes. Thus, the information is not privileged, and the Wellpath Employees must produce it to Elliott Naythan Funkhouser, Sr.'s Estate. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

February 19, 2026