**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<table>
<tr>
<td>

**ESTATE OF ELLIOTT NAYTHAN
FUNKHOUSER, SR., by and through
DIANE MARIE FUNKHOUSER,
Administrator of the Estate of Elliott
Naythan Funkhouser, Sr.**,

*Plaintiff,*

v.

**DELAWARE COUNTY, et al.**,

*Defendants*.

</td>
<td>

**Case No. 2:24-cv-01091-JDW**

</td>
</tr>
</table>

## MEMORANDUM

Lawyering requires care and attention to detail. No less an authority than Daniel Webster explained, "If he would be a great lawyer, he must first consent to become a great drudge."[1] A lawyer who comes to court and asks a judge to do something for his client has a professional obligation to take time to think carefully and in granular detail about the relief that he's requesting to make sure it's warranted. In addition, the lawyer should do his level best to make the judge's life as easy as possible. Make exhibits accessible. Prepare them in a way that makes sense. Review and comply with the judge's procedures. Don't do things that shift work from lawyer to judge. In short, think about a

---

[1] Letter from Daniel Webster to Thomas Merrill (Nov. 11, 1803), in *The Writings and Speeches of Daniel Webster*, vol. 17, 148-49 (Fletcher Webster ed. 1983)

submission as a whole—whether it enables the judge to address it or whether it interferes with those efforts, and whether it conveys to the judge that a lawyer gave its preparation due care.

The lawyers in this case have fallen short of those obligations in connection with their submissions of summary judgment motions, a supporting statement of facts and exhibits, and a related motion to seal. They do not identify the specific documents they seek to seal or even which documents fall into the categories of information they seek to seal. They propose to seal categories of documents for which there could be no possible basis to seal. And they submitted a summary judgment record that is unnecessarily difficult for me to parse because they have submitted exhibits that are at the same time duplicative and needlessly disjointed.

The fact that these problems arise in the context of a motion to seal is, unfortunately, no surprise. Too often, lawyers treat those motions as an afterthought. *See Kivett v. Neolpharma, Inc.*, Case No. 20-cv-664, 2021 WL 1209844, at * 2 (E.D. Pa. Mar. 31, 2021). The result is a submission that lacks detail about the reasons for sealing and the specific harm that would arise from disclosure of any particular piece of information. Those failures leave me, as the steward of the public's interest in access to judicial records, to do work that the lawyers should have done to justify whether a document belongs under seal. That's what has happened in this case. It shouldn't be my job to do the lawyers'

2

work for them, and so this opinion will call out the multitude of ways that the lawyers in this case have fallen short in their submissions.

## I.    BACKGROUND

This case arises from the death of Elliott Funkhouser at the hands of Shad Boccella while the two were housed in the same cell at George W. Hill Correctional Facility (the "Prison") on April 22, 2022. Until April 6, 2022, GEO Group, Inc. operated the Prison, which is in Delaware County, Pennsylvania. After that date, the County assumed control of the prison. Wellpath, LLC provided healthcare services at the Prison, including after the County took control of the Prison from GEO. Mr. Funkhouser's estate asserts claims against the County, GEO, and various individuals who work or worked at the Prison.

The case winded its way through discovery over an extended time due to various procedural hurdles. Discovery closed on April 3, 2026. On June 9, 2026, the Parties filed a joint motion to seal many of the documents that they intended to include as exhibits to their forthcoming summary judgment and *Daubert* motions. On June 11, 2026, various defendants filed a *Daubert* motion, a motion to strike certain expert opinions, and two summary judgment motions. Per my Policies And Procedures, the Parties submitted a joint Statement Of Facts (ECF No. 161) (the "SOF") and 175 supporting exhibits. For some reason, rather than include all the relevant pages of a witness's deposition transcript in a single exhibit, the Parties filed multiple exhibits containing small portions of the transcript. For example, the deposition transcript of Officer Michael Moore spans no less than 32

3

exhibits.[2] Not only that, but some of the Parties' exhibits cover the exact same pages of deposition testimony.[3]

Of the 175 exhibits that the Parties submitted, they proposed to redact or seal at least 96 of them, and maybe more. They also propose to seal the vast majority of the SOF. Yet despite their expansive request, they fail to identify documents that fall into some of the categories that they argue justify sealing. They also argue that the basis for sealing is a party's unilateral confidentiality designation in discovery, rather than making an individual showing of harm. They propose to seal things that they reference in pleadings and other documents that are in the public record. In short, their sealing request is a mess.

## II.    LEGAL STANDARD

The common law presumes that the public has a right of access to judicial records. *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). "In the Third Circuit, the right is particularly robust." *Domus BWW Funding, LLC v. Arch Ins. Co.*, No. 23-cv-94, 2024 WL 7002135, at *1 (E.D. Pa. May 6, 2024) (quotation omitted). To overcome the strong presumption of access that attaches to judicial records, a movant must show that the interest in secrecy outweighs the presumption by demonstrating that

---

[2]    *See, e.g.*, ECF Nos. 163-2, 163-6, 163-10, 163-11, 163-13, 163-14, 163-15, 163-16, 163-18, 163-19, 163-22, 163-23, 163-24, 163-25, 164-1, 164-5, 165-22, 165-23, 165-24, 165-25, 165-26, 165-27, 165-27, 165-28, 165-29, 165-30, 165-35, 166-4, 166-6, 166-9, 166-44, 166-50.

[3]    *See* ECF Nos. 165-32, 165-34, 165-38, 165-44 (including pages 82 and 83 of Nina Chychula's deposition transcript).

4

"the material is the kind of information that courts will protect **and** that disclosure will work a clearly defined and serious injury to the party seeking closure." *Avandia*, 924 F.3d at 672 (quotation omitted) (emphasis added). A party seeking to file material under seal must make a specific showing; "[b]road allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* at 673 (quotation omitted). A court "must 'conduct[ ] a document-by-document review'" to determine whether sealing is warranted. *Id.* (same).

## III.    ANALYSIS

### A.    Summary Judgment Exhibits

The Parties' submission of summary judgment exhibits illustrates their lack of care in their filings. As I noted, they submitted exhibits that overlap, that duplicate each other, and that unnecessarily segment a single transcript into multiple exhibits. This is as inefficient as it is confounding. It made the process of reviewing the exhibits to assess sealing challenging. And it would make the process of assessing summary judgment even harder than it has to be. I won't let the Parties foist extra work on my clerks (who bear the brunt of this) and me. Instead, I will require the Parties to resubmit their exhibits in a way that makes more sense and is more efficient, eliminating any duplication or unnecessary segmentation of exhibits. And I will require them to provide me with an updated SOF that cites to the corrected exhibits.

5

**B.    Sealing**

There are a litany of problems with the Parties' sealing requests, some categorical and others document-specific. I could just deny the request as a whole, given the problems. However, given the interests at stake (third-party privacy and prison security), I have reviewed the documents and arguments to try to determine what, if anything, belongs under seal.

**1.    Threshold issues**

Before I address specific categories of documents that the Parties propose to redact or seal, I will address several threshold issues that pervade their motion. *First*, consistent with Federal Rule Of Civil Procedure 5.2(a), the Court's Local Rules Of Civil Procedure require that "[p]ersonal identifiers such as Social Security numbers, dates of birth, financial account numbers, and names of minor children must be modified or partially redacted in all documents filed either in paper or electronic form[.]" L. R. Civ. P. 5.1.3. Thus, the Parties can—and must—redact such information wherever it appears in their filings. The Parties' decision to include this category of information in their sealing motion demonstrates that they didn't review the Local Rules. And the result of that failure is argument that I had to review unnecessarily. I note, however, that unless I need this PII for purposes of my ruling, the better practice is to redact it from all court filings, rather than to submit unredacted versions to me (or another judge) under seal.

6

*Second*, the fact that the Parties agree that I should seal all or part of certain judicial records is not a sufficient reason to shield those records from public view. "The public deserves better." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). And in situations like this one, where there is no opposition to a sealing request, judges become "the primary representative[s] of the public interest in the judicial process[.]" *Id.* at 418 (quotation omitted). In short, just because the Parties agree to seal judicial records does not mean I will let them do so.

*Third*, and relatedly, the Parties' designation of materials as "confidential" or "attorneys' eyes only" during discovery does not control whether anyone has satisfied the burden of demonstrating that I should seal those documents once they become judicial records on the docket. Indeed, the governing Discovery Confidentiality Agreement And Order recognizes this distinction and requires the parties to *seek leave* from me in order to file designated material under seal. (*See* ECF No. 41 at ¶ 10.) If designating a document "confidential" were a sufficient basis to seal judicial records, then this paragraph would be meaningless. As I've explained before, "[p]arties routinely over-designate materials as 'confidential' in discovery, and there's not a judicial check on [those] designations." *Breitenbach v. SageStream, LLC*, No. 24-cv-893, 2025 WL 1004798, at *3 n.1 (E.D. Pa. Apr. 3, 2025). While agreed-upon secrecy may be appropriate during discovery, "at the *adjudicative* stage, when materials enter the court record, the standard for shielding

records from public view is far more arduous." *Binh Hoa*, 990 F.3d at 420 (original emphasis).

### 2.    Categories of documents

In this case, the Parties did not even try to meet *Avandia's* more rigorous standard for sealing. Nevertheless, given the legitimate security and privacy concerns at issue, I will permit the Parties to seal some of the information they have identified. Yet even for categories where sealing is appropriate, the Parties' submission suffers from a lack of detail that makes it impossible for me to make a final determination as to their arguments.

### a.    Prison-related documents

Photos, videos, or other materials that disclose building layouts, dayrooms, egresses, and exit points at the Prison are the types of materials that courts will protect from public view. *See, e.g.*, *Everett v. United States of America*, No. 2:21-cv-4392, ECF No. 28 at ¶ 2 (collecting cases). And while the Parties failed to articulate the specific harm that would come from the disclosure of such materials, it goes without saying that anyone who seeks to undermine the Prison's security could use this information to do just that. *See id.* at ¶ 3. Thus, both prongs under *Avandia* are satisfied for these types of documents. However, in conducting my review of the documents, I did not see any photos, videos, or other materials that disclose building layouts, dayrooms, egresses, or exit points at the Prison. And because the Parties didn't bother to identify which documents they seek to seal or redact, no one directed me to which exhibits—if any—include these materials. To

the extent such materials appear in the record, the Parties may seal or redact them, but they must identify for me which documents they redacted on this basis when they submit sealed, unredacted copies to me.

The Parties also seek to seal or redact GEO's and the County's policies and procedures regarding inmate housing classification. Internal prison operating procedures are the types of materials that courts will protect from public view. *See, e.g., Brown v. Caldwell*, No. 20-cv-7907, 2023 WL 8064283, at *8 (D.N.J. Nov. 21, 2023). Indeed, like the photos and videos from inside the Prison, the public disclosure of these inmate housing policies could compromise inmate safety and the Prison's overall security.

However, the Parties have not explained why I should keep GEO's policies from public view. The Parties agree that GEO stopped operating the Prison as of April 5, 2022. Thus, I strain to see what harm could come from revealing these policies now—more than four years after GEO left. Because the Parties have not identified a specific harm that will result, they have not met their burden under *Avandia*. To the extent the County's **current** housing policies are in the record (which I do not recall seeing), the Parties may seal them, but they again must identify for me which documents they redacted on this basis when they submit sealed, unredacted copies to me.

**b.    Medical and mental health records**

Shad Boccella's medical and mental health records also meet *Avandia's* rigorous standard. "The Third Circuit has 'long recognized the right to privacy in one's medical

9

information.' It follows, then, that medical records are a type of information that courts will protect from public view." *Doe v. Temple Univ.*, No. 23-cv-4433, 2024 WL 776616, at *4 (E.D. Pa. Feb. 26, 2024) (quoting *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001)). Certainly, disclosure of Mr. Boccella's medical and mental health records would harm him by destroying the privacy he has in them. *See id.* at *4. And because he is a third party to this lawsuit, Mr. Boccella's substantial privacy interest in his medical and mental health records outweighs the presumption in favor of public access. *See Wartluft v. Milton Hershey Sch. & Sch. Tr.*, No. 16-cv-2145, 2020 WL 1124771, at *8 (M.D. Pa. Mar. 6, 2020). Thus, the Parties may seal Mr. Boccella's medical and mental records.

I note, however, that mere references to Mr. Boccella, descriptions about him, and discussions of his murder of Elliott Naythan Funkhouser, Sr. should not be redacted. This information has been public at least since March 13, 2024, when Mr. Funkhouser's Estate filed the original Complaint, which details Mr. Funkhouser's murder and mentions Mr. Boccella more than forty times. And, in any event, local news publications have reported on the murder.[4] Publicly available information is not the type of material that courts protect from public view, and I will not do so here. *See Neebe v. Raving Crossbows, LLC*, No. 19-cv-4934, 2021 WL 12338505, at * 1 (E.D. Pa. Jan. 29, 2021).

---

[4]    *See*, *e.g.*, *Montgomery County man sentenced to state prison for killing cellmate inside Delco jail*, The Philadelphia Inquirer (March 26, 2026), *available at* https://www.inquirer.com/crime/shad-boccella-sentencing-murder-delaware-county-jail-20260326.html#loaded.

Mr. Funkhouser's medical and mental health records are not subject to the same protection as Mr. Boccella's. Mr. Funkhouser is no longer alive. Though he still has a right to privacy, that right is diminished in light of his death. *See, e.g.*, *ACLU v. U.S. Dep't of Just.*, 750 F.3d 927, 936 (D.C. Cir. 2014) (quotation omitted). Though disclosure will harm Mr. Funkhouser's right to privacy in his records, his Estate has not explained why Mr. Funkhouser's diminished interest outweighs the public's right of access. Unlike Mr. Boccella, Mr. Funkhouser initiated this lawsuit and put his records at issue. Thus, his limited privacy interest is not sufficient to overcome the common law right of access, and sealing is not warranted.

Pennsylvania's Mental Health Procedures Act ("MHPA") does not change this analysis. To the extent the MHPA creates a privilege from disclosure that applies in federal court in a federal question case—which no Party has bothered to establish—Mr. Funkhouser's Estate waived any such privilege by bringing this lawsuit. Indeed, "the statutory privilege set forth in section 7111 of the MHPA [is] subject to implicit waiver when a party place[s] the confidential information at issue in a civil lawsuit." *Leskin v. Christman*, 78 Pa. D. & C.4th 152, 164 n.3 (Com. Pl. 2006) (citing *Kraus v. Taylor*, 710 A.2d 1142, 1145 (Pa. Super. Ct. 1998), *overruled on other grounds by*, *Coughlin v. Massaquoi*, 170 A.3d 399, 410 (Pa. 2017)). Thus, even if the MHPA prevents disclosure here, the Estate

11

waived any disclosure protection it may have afforded.[5]

### c.   Third party information

Some of the documents that the Parties seek to redact contain information about inmates other than Mr. Funkhouser and Mr. Boccella. These third parties have nothing to do with this lawsuit. Thus, even if these third parties' privacy interests are minimal, those interests would still outweigh the public's right of access because their identities have *nothing* to do with this case. Indeed, "personally identifying information of nonparties is precisely the kind of information that courts protect, and disclosure of this information would result in a clearly defined and serious injury to the privacy interests of nonparties." *Brooks v. Trans Union LLC*, No. 22-cv-48, 2025 WL 3022295, at *4 (E.D. Pa. Oct. 29, 2025). Accordingly, the Parties may redact the names of the inmates (other than Mr. Funkhouser and Mr. Boccella) that appear in the documents.

### d.   The hodgepodge

The Parties seek to seal or redact a mish-mash of other materials that do not fall into any specific category. Rather than attempt to satisfy the two prongs of the *Avandia* inquiry, the Parties seem to rely on the fact that they designated this material as "confidential" or "attorney's eyes only" during discovery, which I've already explained is not good enough.

---

[5] I also note the inconsistency in the Parties' position. On the one hand, they rely on the MHPA to argue that they cannot disclose these materials. Yet, the materials were disclosed in discovery, and no one came to me to try and stop it.

In fact, some of these proposed designations are mystifying, and they demonstrate how little meaningful thought the Parties put into their sealing request. For example, the Parties seek to redact Mr. Boccella's name on Mr. Funkhouser's cellmate history. There is no scenario where this proposed redaction would make sense in this case. The very first page of the Estate's Second Amended Complaint states that "[Mr.] Funkhouser was placed in a cell with inmate Shad Murray Boccella," and the pleading goes on to detail Mr. Funkhouser's murder by Mr. Boccella. (ECF No. 56 at 1.) The fact that I had to review this proposed redaction as part of my document-by-document review is a waste of scarce judicial time. Similarly, the Parties propose to redact the County Report of Serious Incidents form relating to Mr. Funkhouser's murder. Again, I cannot conceive of any valid reason to seal this document given the numerous references to this incident on the public docket since March 13, 2024. These requests aren't just problematic in their own right. They call into question my ability to rely on the Parties' submissions more broadly because I know they aren't applying any meaningful rigor.

After conducting a document-by-document review, I will not permit the Parties to seal or redact the following information:

- Exhibit 4 – deposition testimony regarding whether correctional officers received mental health training;

- Exhibits 7-9 – list of inmate transfers from February and March 2022;

- Exhibit 11 – paragraph of internal email discussing Mr. Boccella;

- Exhibit 13 – list of inmates including their assigned cells from unknown date and without corresponding key;

- Exhibit 15 – email thread from February 21, 2022 to check on Mr. Boccella;

- Exhibit 16 – deposition testimony about Wellpath policy regarding frequency of psychology exams;

- Exhibit 17 – Wellpath policies and procedures regarding mental health services (Version 8);

- Exhibit 18 – deposition testimony regarding inmates' rights to refuse drug, alcohol, and mental health evaluations, in general;

- Exhibit 19 – deposition testimony regarding timing of psychiatric evaluations of inmates, in general;

- Exhibit 20 – deposition testimony regarding inmates' ability to refuse mental health treatment, in general;

- Exhibit 27 – deposition testimony discussing initial inmate classification procedures, in general;

- Exhibit 28 – PREA Risk Assessment for Mr. Boccella;

- Exhibit 31 – deposition testimony about looking at inmates' prior incarcerations to make classification decisions;

- Exhibit 34 – Mr. Boccella's file from Offender Management System;[6]

- Exhibit 35 – deposition testimony about previous instances of asking medical team for input regarding inmate housing assignments, in general;

- Exhibits 38-41 – deposition testimony about doing criminal history search for Mr. Boccella;

---

[6]     Consistent with my analysis above, however, the Parties should redact Mr. Boccella's birthdate and Social Security number.

- Exhibit 42 – Booking Observation Report for Mr. Boccella;[7]

- Exhibit 44 – deposition testimony about intake status roster sheet;

- Exhibit 47 – deposition testimony about Mr. Boccella's initial housing assignment and whether he underwent an initial psychological assessment;

- Exhibit 48 – deposition testimony about past crimes of violence;

- Exhibit 49 – deposition testimony about general process for cell classification and who has authority to change classification;

- Exhibit 50 – deposition testimony about communications with Mr. Boccella;

- Exhibit 51 – deposition testimony about whether inmates appealed house-alone status;

- Exhibit 53 – deposition testimony about when District Attorney's Office prepares records;

- Exhibits 55-56 – deposition testimony about decision process for assigning inmates to cells;

- Exhibits 57 & 59 – deposition testimony about whether correctional officers received training for dealing with inmates dealing with mental health issues;

- Exhibit 63 – deposition testimony about who could make suicide watch determinations;

- Exhibits 64 & 72 – deposition testimony about assessing patients' needs;

- Exhibit 65 at 46:23 – 47:24 – deposition testimony about mental health professionals at the Prison and safety plans;

- Exhibit 73 – deposition testimony about when Mr. Bocella was incarcerated and when Mr. Funkhouser died;

- Exhibit 74 – deposition testimony about how to access inmates' files;

---

[7] *See* footnote 6.

- Exhibit 80 – Mr. Boccella's inmate housing history;

- Exhibit 83 – deposition testimony about when deponent e-signed a document;

- Exhibit 85 – letter from Mr. Boccella's criminal defense attorney to warden;

- Exhibit 90 – deposition testimony about a nurse practitioner who used to work at the prison;

- Exhibit 93 – Professional Services Agreement between Delaware County Board of Prison Inspectors and GEO Corrections and Detention, LLC;

- Exhibit 94 – Mr. Funkhouser's inmate housing history;

- Exhibits 95-96 – internal email threads about Mr. Funkhouser's housing assignment;[8]

- Exhibits 97-98 – deposition testimony regarding email about inmates with mental health issues;

- Exhibit 99 – deposition testimony about Mr. Boccella's behavior;

- Exhibit 101 – deposition testimony about transferring Mr. Boccella;

- Exhibit 102 at 79:8-24 – deposition testimony about who would handle discipline at the prison;

- Exhibit 103 – deposition testimony about transferring Mr. Boccella and the letter from his attorney to the warden;

- Exhibits 104-105 – deposition testimony about Mr. Funkhouser's history and classification;

- Exhibit 106 – Defendant Delaware County's Responses To Plaintiff's Interrogatories;

---

[8]     Consistent with my analysis above, however, the Parties should redact the names of other inmates listed in this document.

- Exhibits 107, 109, 118-119 – deposition testimony about information used to make classification decisions;

- Exhibit 108 – internal email thread about creating tier system for inmates with mental health issues;

- Exhibit 110 – deposition testimony about creating tier system for inmates with mental health issues;

- Exhibits 111 & 120 – deposition testimony about unknown topic;

- Exhibit 112 – definitions of different tiers of mental health inmates;

- Exhibit 114 – deposition testimony about rounding in mental health unit;

- Exhibit 115 – internal email thread regarding tier scores for certain inmates;

- Exhibit 121 – deposition testimony about tier system;

- Exhibit 122 – deposition testimony about touring a unit;

- Exhibits 123 & 126 – deposition testimony about conversations with correctional officer about Mr. Boccella;

- Exhibits 113, 124-125, 127 – deposition testimony about tier system for inmates;

- Exhibit 130 – internal email thread about transferring Mr. Funkhouser;

- Exhibits 131, 134 – deposition testimony about transferring Mr. Funkhouser;

- Exhibit 137 – list of inmate transfers and discharges from April 2022;

- Exhibit 140 – George W. Hill Correctional Facility Incident Report dated April 26, 2022;

- Exhibits 143, 148, 157 – deposition testimony mentioning Mr. Boccella's name;

- Exhibit 144 – deposition testimony about whether Mr. Boccella was designated to be housed alone;

- Exhibit 145 – page from Mr. Boccella's file in Offender Management System;[9]

- Exhibit 146 – deposition testimony about what "liked-minded" means;

- Exhibit 149 – deposition testimony about Mr. Boccella;

- Exhibit 151 – Mr. Boccella's name on Mr. Funkhouser's cellmate history;

- Exhibits 152 & 154 – deposition testimony about deponent's involvement in competency exams and what happened during Mr. Boccella's exam;

- Exhibit 155 – Application For Incompetency Examination as to Mr. Boccella, presumably filed with the Delaware County Court of Common Pleas;

- Exhibit 156 – County Report of Serious Incidents form relating to Mr. Funkhouser's murder;

- Exhibit 158 – report from forensic pathologist about Mr. Funkhouser's death;

- Exhibit 161 – Wellpath policies and procedures regarding patients with chronic disease and other special needs;

- Exhibit 162 – Wellpath policies and procedures regarding mental health services (Version 7); and

- Exhibit 173 – deposition testimony that Mr. Boccella strangled Mr. Funkhouser to death.

### 3.    The SOF

The Parties have sought to redact the *vast majority* of the SOF, which includes 187 paragraphs, spans 51 pages, and references 175 exhibits. This is, once again, an unserious

---

[9]    *See* footnote 6.

18

effort to propose narrowly tailored redactions. Parties who ask the Court to keep information from the public must do far more, and it is not my job to craft arguments for them. If a paragraph references material that I have permitted the Parties to redact or to file under seal, then they may redact that reference in the SOF. But I remind the Parties that this is a case involving *public* facilities and a matter of *public* concern. Redactions should be the exception, not the rule.

## II.    CONCLUSION

Counsel in this case needs to do better. Much better. I will strike the SOF and the supporting exhibits and give counsel a chance to file corrected versions. I will also grant in part and deny in part the Sealing Motion.[10] When counsel refile the exhibits, they can file the specific ones listed in my Order under seal, with redacted versions on the public docket. An appropriate Order follows.

BY THE COURT:


*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

July 8, 2026

---

[10]    Because some of my ruling is based on a lack of a specific showing, one or more Parties might be tempted to seek reconsideration and try to supplement the record. Before they do so, I caution them to read my decision in *Breitenbach v. SageStream, LLC*, No. 24-cv-893, 2025 WL 1004798, at *2 (E.D. Pa. Apr. 3, 2025), which makes clear that the reconsideration standard likely bars such a belated effort.